186 P.2d 477

## FENTON et al. v. KING HILL IRR. DIST. et al.

### No. 7282.

Supreme Court of Idaho.

Oct. 16, 1947.

Rehearing Denied Dec. 4, 1947.

458

W. H. Langroise, of Boise, for appellant Fenton.

Eugene H. Anderson and Charles F. Reddoch, both of Boise, for respondents and cross-appellants.

Maurice H. Greene, of Boise, for appellants Buell and Fletcher.

HOLDEN, Justice.

The King Hill Irrigation District was organized October 15, 1920, with its office at King Hill in Elmore county, Idaho. Ever since its organization it has operated and still operates irrigation canals, ditches and other structures designed for the irrigation of lands situate in Gooding, Elmore, Twin Falls and Owyhee counties in the state of Idaho. Some years after its organization judgments were rendered against the district as follows, to wit:

August 22, 1936, Barney Eckstein recovered a judgment against the District in the District Court of Elmore County, for the sum of $7,820.10.

April 21, 1937, the Glenns Ferry Bank, Ltd., recovered a judgment in the District Court of Elmore County against the District for the sum of $54,091.96.

June 10, 1940, Eckstein assigned his judgment to appellant Fred R. Fenton, for which assignment Fenton paid Eckstein the sum of $1,537.27.

July 10, 1940, the Glenns Ferry Bank assigned 32.529 per cent of its judgment to appellant Fenton, for which Fenton paid the sum of $3,085.48.

August 30, 1940, the Glenns Ferry Bank assigned 67.471 per cent of its judgment to appellants Buell and Fletcher for which they paid the sum of $13,000.

October 15, 1940, a duly verified petition for an alternative writ of mandate against the District and its officers and directors was filed in the District Court of Elmore County, and, on the same day, an alternative writ was issued and later served upon the officers and directors. The purpose of the petition, stated broadly, was to compel the District to levy assessments against the lands within the District sufficient to pay the above-mentioned judgments, principal and interest, and to compel the District to pay the assessments collected over to the petitioners.. The alternative writ commanded that the District make the levies

and pay the judgments, principal and interest, or show cause, at a time therein fixed, why it had not done so.

April 5, 1941, the defendants filed a duly verified answer and return. November 17, 1941, the defendants filed an amended answer and return to the above-mentioned petition.

The cause was tried commencing November 17, 1941, by the court sitting with a jury, on the fifth and sixth defenses pleaded by respondents, the sixth defense being later withdrawn from the consideration of the jury. The fifth defense alleged, among other things, in substance: That on or about June 1, 1937, appellant Fred R. Fenton was employed by the defendant District as its confidential fiscal agent for the purpose of liquidating the indebtedness of the District, including the judgments above mentioned; that Fenton, as such fiscal agent, was trusted with full information relative to the indebtedness of the District and the negotiations for the compromise settlement of the judgments; that the officers of the district also negotiated for a compromise of the judgments with the holders thereof; that the negotiations resulted in an agreement for the compromise of the judgments; that Fenton was informed of such compromise agreement and the amounts compromised for; that the amount agreed to be paid for the Eckstein judgment was $1,500 or thereabouts, and for the Glenns Ferry Bank judgment $12,000 or thereabouts; that

Fenton, as such fiscal agent, thereupon purchased the Eckstein judgment for and in behalf of the District for the sum of $1,537.27, but that he took the assignment of the judgment in his own name; that Fenton also, as such fiscal agent, and while employed in such fiduciary capacity by the District, purchased 32½ per cent of the Glenns Ferry Bank judgment for the approximate sum of $3,085.48, and induced appellants Buell and Fletcher to purchase the remaining 67½ per cent of the bank judgment for approximately $12,000, that said purchase was made for and in behalf of the District, but that Fenton took the assignment for said 32½ per cent of said judgment in his own name, and that the remaining 67½ per cent of said judgment was placed in the names of appellants Buell and Fletcher.

The court submitted six interrogatories to the jury, to which the jury made the following answers, to wit:

"Question No. 1: Was Fred Fenton, on or about the 1st day of June, 1937, employed by the King Hill Irrigation District, as its fiscal agent, for the purpose of negotiating for and in behalf of said King Hill Irrigation District, a compromise settlement with the holders of the judgments against said District? Answer: Yes.

"Question No. 2: Did the said Fred R. Fenton pursuant to his said appointment, take up negotiations with the holders of the said judgments for settlement, liquidation

and compromise of said judgments? Answer: Yes.

"Question No. 3: Did the officers of said District, also, at or about or during the same time, enter upon such negotiations? Answer: Yes.

"Question No. 4: Did the said negotiations, either those by the officers or those by said Fred R. Fenton, or by reason of both, result in agreements on the part of said judgment holders to accept in full payment of said judgments, the following amounts, to-wit:

For the Barney Eckstein judgment, the sum of $1,537.27 or thereabouts; and for the Glenns Ferry Bank judgment the sum of approximately $12,000.00? Answer: The negotiations of Fenton resulted in such agreement.

"Question No. 5: Did Fred R. Fenton gain knowledge while in the employ of the King Hill Irrigation District as its fiscal agent, that the judgments against the District could probably be obtained or bought for reduced amounts, and did he by reason of such knowledge so gained while he was such agent for the District, thereafter take up negotiations with the holders of said judgments for the purchase of said judgments at reduced amounts for himself, or for himself and others, and through such negotiations procure such assignments to himself and to Buell and Fletcher? Answer: Yes.

"Question No. 6: Did the said Fred R. Fenton at any time prior to the time he took the assignments of the judgments to himself and to the said W. E. Buell and Jack Fletcher, give notice to the King Hill Irrigation District, or to any of its officers that he, said Fred R. Fenton, had renounced or abandoned, or was then renouncing or abandoning his said appointment as agent for the said District? Answer: No."

June 7, 1945, findings of fact and conclusions of law were made, and filed June 15, 1945, and judgment thereon entered the same day. From the judgment Buell and Fletcher appealed September 5, 1945, and on the same day Fenton appealed. The District and its officers cross-appealed.

■ Appellants insist respondents' fifth affirmative defense does not state facts sufficient to constitute a defense to the petition for writ of mandate. While the fifth defense could have been made more definite in some particulars, still and nevertheless, given a liberal interpretation, as required by statute, it is sufficient. Section 5-801, I.C.A., provides: (Section 5-801). "In the construction of a pleading for the purpose of determining its effect, its allegations must be liberally construed with a view to substantial justice between the parties."

■ Respondents alleged, in their fifth defense, among other things, that the "district's negotiations resulted in a settlement." Appellants contend that by submitting in-

terrogatories two, four and five, instead of interrogatories two and three requested by them, *"the trial court injected into the case an entirely new issue: that Fenton made the alleged agreement of settlement."* (Emphasis appellants').

As just pointed out, in construing a pleading for the purpose of determining its effect, "its allegations must be liberally construed with a view to substantial justice between the parties." Given a liberal, rather than a narrow, construction, respondents' fifth defense pleaded that Fenton was employed as the fiscal agent of the District for the purpose of liquidating the indebtedness of the District, including the judgments, and that a compromise settlement was reached through the joint negotiations of the District and Fenton. Hence, there is no merit in appellants' contention the trial court injected an entirely new issue into the case.

■ Appellants insist this is a special proceeding, not an action at law nor a civil action, and, therefore, the trial court was without jurisdiction to hear and determine the equitable defenses pleaded by cross-appellants. It is true this proceeding is not an action at law nor a civil action under our code. However, it is expressly provided by statute (Sec. 13-307, I.C.A.) that "If an answer be made [in mandamus] which raises a question as to a matter of fact * * * affecting the substantial rights of the parties, and upon the supposed

truth of the allegation on which the application for the writ is based, the court may, in its discretion, order the question to be tried before a jury * * *."

An original application was filed in this court for a writ of mandate in Nelson v. Steele, 12 Idaho 762, 88 P. 95. In that case this court held "The proceeding for a writ of mandate under the provisions of the statute [referring to the statute above quoted] of Idaho is a special proceeding of a civil nature, and in not a suit at common law or a civil action, and neither party to such proceeding is entitled as a matter of right to a trial by jury." It was further held "The proceeding [in mandamus] in the case at bar [Nelson v. Steele, supra,] is not a suit at common law nor a civil action under our code, but a special proceeding, and *the trial of the questions of fact in such proceeding may, in the discretion of the court, be submitted to a jury."* (Emphasis added).

In the instant proceeding certain facts were, as above pointed out, pleaded by cross-appellants, which affected the substantial rights of the parties; hence, the trial court, in the exercise of the discretion vested in it by Sec. 13-307, supra, submitted such questions of fact to a jury. And, while some of the questions were of an equitable nature, still, and nevertheless, that could not under Sec. 13-307, supra, oust the trial court of jurisdiction.

■ Here, as in Hayes v. Flesher, 34 Idaho 13, 19, 198 P. 678, 679, it is urged the

trial court erred in refusing to give certain requested instructions and in giving certain instructions. In that case, we said: "Appellant also complains of the court's action in refusing to give certain instructions requested by him, and specifies as error the giving of certain instructions. Since, however, the jury was called only in an advisory capacity [as in the instant proceeding], and their findings are not binding upon the court, and cannot relieve the court from the necessity of making its own findings, the action of the court in giving or refusing instructions will not be reviewed." (That holding was recently quoted and approved by this court in Eastern Idaho Loan & Trust Company v. Blomberg, 62 Idaho 497, 507, 113 P.2d 406).

Therefore, there is no merit in any of appellants' specifications of error involving either the refusal to give requested instructions or in giving instructions.

Fenton admits he was the fiscal agent of the District, but did appellants Buell and Fletcher have notice he was the fiscal agent of the District and in such capacity was acting for and in behalf of the District in the compromise and acquisition of the judgments, and in particular, that part of the bank judgment assigned to Buell and Fletcher?

The record shows Buell and Fletcher maintained joint offices; had been associated in business for about ten years; that they were engaged in the business of purchasing securities of the nature of the bank judgment; that, as explained by Fletcher:

"Q. It is a matter of what you consider salvage operations on defunct organizations or organizations who are distressed by their obligations, isn't it? A. I don't know whether you would call it salvage or not. I don't know what word you would use for it. We simply make purchases of that nature, or, we don't make purchase, we secure a majority or a large majority or all of the securities that are held by various people, and then we negotiate with the District and arrive at some kind of a settlement.

"Q. And that is the business that Mr. Buell and yourself are engaged in? A. That is correct."

That Fenton had known Buell since the latter part of 1935; that in the first part of July, 1940, Fenton spoke to Buell and Miller (an attorney for Buell and Fletcher) about the "stalemate that had occurred in the King Hill Irrigation District" (apparently referring to Fenton's efforts to reach a compromise settlement of the judgments against the District); that Fenton had had "business dealings" with Buell prior to August 1940; that Fenton told Miller and Buell he had options on a couple of judgments against the District; that Fenton asked Buell if he would be interested in buying the bank's judgment so "we could get some action" (emphasis added); that Buell and Fletcher entered into negotiations almost immediately for

the purchase of the bank judgment; that Fenton told Buell and Fletcher the approximate amounts for which the bank judgment could be obtained; that Fenton, Buell and Fletcher went over the District together inspecting farms and crops; that Fenton, Buell and Fletcher went to the bank together where negotiations were had for the purchase of 67½ per cent of the bank's judgment; that Fenton, Buell and Fletcher were together at Boise where the deal for the purchase was apparently closed.

Furthermore, William W. Knox, President of the Glenns Ferry Bank, Ltd., a witness called by appellants, testified concerning the assignment executed by that bank to appellants Buell and Fletcher:

"Q. Now, this assignment was negotiated by Mr. Fenton, wasn't it?

"Mr. Greene: Now, again I object to that as being improper cross-examination. Certainly we didn't go into that on direct examination.

"The Court: I think I will permit him to answer. He is anticipating, but he may answer. A. Will you state the question? (The reporter read the last question.) A. Why, Mr. Fenton was instrumental * * *

"Q. In having the assignment made to Fletcher and Buell? A. Yes.

"Q. He was the one who brought Fletcher and Buell down to the Bank, wasn't he? A. Yes.

"Q. And he was the one who negotiated for the sale prior to the time that he brought them to the Bank, wasn't he? A. He was instrumental.

"Q. You never knew Fletcher and Buell until he brought them down there, did you? A. No, I didn't.

"Q. You never did know them? A. No.

"Q. And he brought them down there for the purpose of having the assignment made to them of this judgment, didn't he? A. Yes.

"Q. He was the one who negotiated with you for the amount of money to be paid for this assignment, 'Exhibit No. 11,' wasn't he? A. Yes.

"Q. Mr. Fenton was? A. Yes."

While, on the facts and circumstances above stated, different minds might reach different conclusions on the question as to whether Buell and Fletcher had notice Fenton was the fiscal agent of the District, and in such capacity was acting for and in its behalf in the compromise and settlement of that part of the bank judgment assigned to Buell and Fletcher, we have uniformly held that "where such is the case, however meager the evidence, if it is of a substantial nature and character [as in the case at bar], the findings of the triers of fact should prevail." Smith v. Clearwater County, 65 Idaho 271, 278, 143 P.2d 561, 563; Estate of Randall, 58 Idaho 143, 146, 70 P.2d 389; McKissick v. Oregon

466

Short Line Ry. Co., 13 Idaho 195, 89 P. 629; Fleenor v. Oregon Short Line R. Co., 16 Idaho 781, 803, 102 P. 897; Denton v. City of Twin Falls, 54 Idaho 35, 43, 28 P.2d 202; Call v. City of Burley, 57 Idaho 58, 69, 62 P.2d 101.

Furthermore, this court held in Hill v. Federal Land Bank, 59 Idaho 136, 141, 80 P.2d 789, 791, that " * * * whatever is notice enough to excite the attention of a man of ordinary prudence and prompt him to further inquiry, amounts to notice of all such facts as a reasonable investigation would disclose."

Bearing in mind Buell and Fletcher were, and had been, engaged in the business of purchasing securities of the nature of the bank judgment and, therefore, were experienced in that field, surely the facts and circumstances above outlined and detailed, together with all the other facts and circumstances in the case, would have excited the attention of these experienced dealers and prompted them to inquiry. Hence, they are chargeable with notice of all the facts a reasonable investigation would have disclosed.

Buell and Fletcher having had notice Fenton was the fiscal agent of the District and in such capacity was acting for and in its behalf in the compromise and settlement of the judgments against the District, thereby and by reason thereof, knew of the confidential relationship existing between Fenton and the District, and that Fenton was violating his duty to the District in giving them the confidential information he had obtained as such agent, of the amount for which the bank judgment could be obtained. And, further, Buell and Fletcher, having knowledge Fenton was the agent of the District and of the confidential relationship existing between Fenton and the District, thereby and by reason thereof, further knew it was Fenton's duty to acquire the assignment of the bank judgment for the District, and that Fenton was violating that duty by causing 67½ per cent of that judgment to be assigned to them. Where a fiduciary, in violation of his duty to the beneficiary, communicates confidential information to a third person, the third person if he had notice of the violation of the duty (as in the case at bar), holds upon a constructive trust for the beneficiary (Sec. 201, p. 813, Restatement of the Law of Restitution, American Law Institute; see also 4 Pomeroy's Eq.Jur., Sec. 1053, p. 119).

In the case at bar it appears from the record Fenton negotiated the assignment of an 67½ per cent interest in the bank judgment against the District, and, further, that instead of taking an assignment of that interest to himself, Fenton caused the assignment to be made direct to Buell and Fletcher, which amounts to the same thing as taking the assignment to himself and then transferring the interest to Buell and Fletcher. "Where a fiduciary wrongfully transfers to a third person prop-

erty which he holds as fiduciary, the third person is chargeable as constructive trustee of the property unless he is a bona fide purchaser. He is chargeable as constructive trustee if he received the property with notice of the transferor's breach of duty or if he gave no value even though he had no notice" (3 Scott on Trusts, Sec. 506, p. 2429). And "where it is the duty of the fiduciary to purchase the property for the beneficiary, and he purchases the property for a third person, the seller [in the case at bar, the bank] conveying the property to the third person [in this case, Buell and Fletcher] at the direction of the fiduciary [Fenton], the third person holds the property upon a constructive trust for the beneficiary, if he had notice [as Buell and Fletcher did] that the fiduciary was violating his duty or if he did not give value" (Sec. 201, p. 814, Restatement of the Law of Restitution, American Law Institute).

Futhermore, "Where a fiduciary in violation of his duty to the beneficiary acquires property through the use of confidential information [as Fenton did in the case at bar], he holds the property so acquired upon a constructive trust for the beneficiary." (Sec. 200, p. 812, Restatement of the Law of Restitution, American Law Institute; see also 3 Scott on Trusts, Sec. 505, p. 2427; 4 Pomeroy's Eq.Jur., Sec. 1052, pp. 115, 116).

We come now to respondents' cross-appeal. By its fifth defense the District pleaded, in substance, that Fenton was employed as its confidential agent to negotiate a compromise settlement of certain judgments; that a compromise settlement was made through the joint efforts of Fenton and the District; that Fenton had one of the judgments assigned to himself, and 32½% of another, to wit, the bank judgment, and that Fenton causes 67½ per cent of the bank judgment to be assigned to Buell and Fletcher and that Buell and Fletcher had notice Fenton was the agent of the District. Hence, that Fenton, Buell and Fletcher held the assignments in trust for the District. On the other hand, the District, by its sixth defense, in substance, pleaded an express written trust. It appears that, January 4, 1938, a written declaration of trust was made by W. C. Ruberry, Charles Stout, Ralph Graham, George H. Rosevear and James Spofford. It further appears that, January 8, 1938, the Glenns Ferry Bank "by written indenture of assignment," transferred and assigned its judgment against the District for $54,091.26 to the above named persons, as a liquidating committee, for the purpose, as alleged by cross-appellants "of the settlement and liquidation of such judgment." And it is also alleged by cross-appellants that such assignment was made to the committee "in trust for the land owners of such [King Hill Irrigation] district". It is further alleged by cross-appellants that "Pursuant to such assignment to them, they, the said liquidating committee, ar-

ranged with King Hill Irrigation District for the levy by it in the year 1938 and in each year thereafter the sum of seventy-five cents per acre on all of the lands in such district for the payment of all of the debts and judgments outstanding against such district, until the amount of 60% of the principal amount of the warrants upon which said judgment so assigned to them was based by and through successive renewals; that pursuant to such arrangement, King Hill Irrigation District levied in each of the years 1938, 1939 and 1940, on all of the lands within such district, the amount of seventy-five cents per acre, for the payment of such judgment on the said basis for settlement thereof made and arranged with said liquidating committee to which such judgment had been assigned as hereinbefore alleged; that said liquidating committee is *still* [Emphasis added] the rightful owner and holder of said judgment [the bank judgment] alleged in paragraph VI of the petition for alternative writ of mandate."

It is at once apparent the sixth defense flatly contradicts the fifth. If the allegations of the fifth defense are true, then the allegations of the sixth defense are not true. In other words, proof of one would necessarily disprove the other. Section 5-616, I.C.A., provides: [Section 5-616]. "The defendant may set forth by answer as many defenses and counterclaims as he may have. They must be separately stated, and the several defenses must refer to the causes of action which they are intended to answer, in a manner by which they may be intelligibly distinguished. The defendant may also answer one or more of the several causes of action stated in the complaint and demur to the residue."

It is true as contended by cross-appellants that "Defendant is permitted to set forth as many defenses as he may have and they may be in a certain sense inconsistent with each other", but, as this court held in Harshbarger v. Eby, 28 Idaho 753, 759, 156 P. 619, 620, Ann.Cas.1917C, 753, "While it is true that, under section 4187, Rev.Codes [now Sec. 5-616, I.C.A.], the appellants were permitted to set forth in their amended answer as many defenses and counter-claims as they might have, and the same might, to a certain extent, be inconsistent with each other, yet they must not be so inconsistent that the proof of one defense would necessarily disprove the other." Hence, the trial court properly withdrew the sixth defense from the consideration of the jury.

While we have fully considered the many contentions of counsel for the respective parties to this proceeding, as well as the many cases cited in support thereof, we have discussed and considered only those deemed material to a decision of the respective appeals.

From what has been said it follows the judgment of the trial court must be, and it is, hereby affirmed. Costs awarded to respondents.

BUDGE, C. J., MILLER, J., and PORTER, D. J., concur.

SUTTON, District Judge (concurring in part and dissenting in part.)

I concur in the majority opinion in so far as the plaintiff-appellant Fenton and the cross-appeal of the defendants-respondents are concerned.

Perhaps the conclusion reached by the majority does substantial justice between the Irrigation District and the Appellants Buell and Fletcher. However, I cannot concur in that conclusion because in my opinion the defendants' fifth affirmative defense does not state facts sufficient to constitute a defense as against the plaintiffs Buell and Fletcher and, therefore, said plaintiffs' demurrer to said fifth affirmative defense should have been sustained. The fifth affirmative defense, so far as pertinent, reads as follows: "That the said Fred R. Fenton as such fiscal agent and while in such fiduciary capacity for King Hill Irrigation District induced and procured the plaintiffs W. E. Buell and Jack Fletcher to advance, and they did advance, moneys in the approximate sum of $9,000.-00 to purchase, and there was purchased therewith, 67½% of the judgment alleged in paragraph VI of the petition for writ of mandate, for and on behalf of King Hill Irrigation District but that the said judgment was placed in the names of the said Jack Fletcher and W. E. Buell and that King Hill Irrigation District is entitled to such judgment so purchased for them upon repayment of said amount advanced by the said Fletcher and Buell."

It was not the pleader's intention, I am sure, and the trial court did not construe this allegation as being one to the effect that Buell and Fletcher advanced or loaned the money in question to either the Irrigation District or Fenton. If that were the contention it would fail for the want of any proof whatever to support it. Upon this allegation and the testimony set out in the majority opinion is hung a finding to the effect that Buell and Fletcher knew of the fiduciary capacity of Fenton and of his violation of such relationship. I think the finding is not responsive to the allegation.