602 P.2d 64

**AZTEC LIMITED, INC., an Idaho Corporation, Plaintiff-Appellant,**

**v.**

**CREEKSIDE INVESTMENT COMPANY, a Limited Partnership, Defendant-Respondent.**

**No. 12978.**

Supreme Court of Idaho.

Oct. 31, 1979.

Bruce S. Bistline, Pocatello, for plaintiff-appellant.

Monte R. Whittier and R. Max Whittier, Pocatello, for defendant-respondent.

BAKES, Justice.

In 1976 appellant Aztec, Ltd., acting through its president, Roger Seaton, purchased a piece of real property in Pocatello, Idaho. At the time of the purchase, Seaton knew the approximate amount of land which had been purchased. He thought that the land lay to the north of Pocatello Creek Road, a public highway. After ordering a survey and title report, Seaton discovered instead that a small strip of Aztec's property lay to the south of the paved and traveled portion of Pocatello Creek Road.

Immediately to the west of Aztec's property, Pocatello Creek Road had been platted and offered for dedication to the public at a width of 70 feet. The portion of the road through Aztec's property has not been platted or dedicated to public use, although it has been used by the public for many years. At the time of purchase, there were no easements of record across Aztec's property. However, Aztec concedes that numerous years of public use have created a public prescriptive right of way on Pocatello Creek Road. The width of the prescriptive right of way or easement was in dispute at the trial. However, the trial court made no specific finding with respect to the width of the Pocatello Creek Road easement. Instead, it found other issues to be dispositive.

The heart of this controversy involves a roadway known as Freeman Lane, a dead end road that runs to the south off of Pocatello Creek Road. Freeman Lane came into existence when certain homeowners south of appellant's property (including respondent Creekside Investment Company's predecessors in interest) joined in the execution of reciprocal deeds which created a roadway easement, 50 feet wide, for access to their homes across their respective lands. This recorded easement extends from the homeowners' property north to the southern boundary of Aztec's property but falls a few feet short of the paved and traveled portion of Pocatello Creek Road. This gap between the end of the recorded Freeman Lane road easement and the traveled portion of Pocatello Creek Road, which gap is part of Aztec's property, is the subject of this controversy.

Freeman Lane physically extends across the gap and intersects with the pavement of Pocatello Creek Road. Therefore, in order to get to Pocatello Creek Road from the Freeman Lane easement, one must pass over a portion of Aztec's property. The intervening strip of Aztec's land between Pocatello Creek Road and the deeded Freeman Lane easement is roughly six feet by fifty feet. This intervening strip is the alleged trespass area. The creators of the deeded Freeman Lane easement, as well as their successors, have for a considerable period of time been crossing the alleged trespass area in order to gain access to their homes. Thus, these individuals do, as Aztec freely acknowledges, enjoy a limited prescriptive easement across Aztec's land. The period of adverse use began at least eleven years ago and probably as early as 1959, but was limited to providing access to three or four homes.

The City of Pocatello paved Freeman Lane in 1973. Since such time, the city has also maintained Freeman Lane. The city has not acquired any interest of record in Freeman Lane. It has not been platted or dedicated to public use.

In 1976, respondent Creekside, which acquired its property from the owners who created the Freeman Lane easement, began construction of a 200-unit apartment development on its property to the south of appellant's property. When Seaton discov-

ered that Creekside was utilizing Freeman Lane as the sole means of access for the project, he informed them of what he felt were Aztec's property rights in the area in question. Seaton further informed Creekside that he felt their activities constituted a trespass and demanded that they cease. Creekside continued construction on its project.

In May of 1977, appellant Aztec commenced an action against respondent Creekside for trespass to its land. In its complaint, appellant prayed for general and punitive damages as well as injunctive relief. The case proceeded to trial before the district court, sitting without a jury. At the close of Aztec's case, Creekside moved for a "nonsuit."[1] The trial court granted the motion in part. It ruled that since the plaintiff Aztec had in any event failed to prove any actual damage, it would not be entitled to monetary relief. The court then took under advisement the remaining issue of injunctive relief. No further testimony was taken.

The trial court later found that while Freeman Lane had never been dedicated to the public, the public had used Freeman Lane. The court noted that the City of Pocatello had surfaced Freeman Lane in 1973 and had been maintaining it since that time and treating it as a public right of way. The court further found that since the strip of land in question was isolated from the remainder of Aztec's property, the servient estate owned by Aztec would suffer absolutely no increase in burden as a result of the increase in use of the dominant estate. The court concluded that the physical character of the prescriptive easement was not being materially changed and that the purpose of the easement, i. e., to provide access to the dominant estate for vehicular traffic, was not changed in any degree. Based upon the above findings, the court declined to issue injunctive relief.

I

Appellant contends that the trial court erred in concluding that the Freeman Lane prescriptive easement was a public one; that the increase in traffic over the alleged trespass area did not amount to a trespass; and that the respondent's enlargement of the width of Freeman Lane in the alleged trespass area did not amount to a trespass. We agree.

The trial court found that Freeman Lane was a public easement. This finding is unsupported by any evidence and therefore is clearly erroneous. See, e. g., Russ Ballard & Family Achievement Institute v. Lava Hot Springs Resort, Inc., 97 Idaho 572, 548 P.2d 72 (1976); I.R.C.P. 52(a). The only evidence which would support this finding is the fact that Freeman Lane has been paved and maintained by the city since 1973. This action was commenced in May of 1977. A similar action was commenced by Aztec against the City of Pocatello in December of 1977. The prescriptive period for a public road in Idaho is five years. I.C. § 40–103; I.C. § 5–203. See Ross v. Swearingen, 39 Idaho 35, 225 P. 1021 (1924). While the evidence supports, and appellant admits, that the three or four homeowners, their visitors and invitees have a private easement, there is no competent evidence in the record which would tend to support a finding of adverse use and maintenance by the public for the full prescriptive period.

We next address the issue of whether Creekside's increased use of Freeman Lane amounts to an impermissible expansion of the original easement or merely an increase in degree of use. Generally, an easement acquired by prescription is confined to the right as exercised during the prescriptive period. It is limited by the purpose for which it is acquired and the use to which it is put. Gibbens v. Weisshaupt, 98 Idaho 633, 570 P.2d 870 (1977); Palmer v. Fitzpatrick, 97 Idaho 925, 557 P.2d 203 (1976). This general rule, however, admits of a single and narrow exception. In Gibbens, we stated:

1. Counsel for Creekside characterized its motion as a Motion for Nonsuit. We believe it appropriate to characterize and treat it as a

Motion for Involuntary Dismissal pursuant to I.R.C.P. 41(b).

"We do not mean to imply from our decision today that any increase in use of a prescriptive easement is an expansion. . . . We are aware that some changes in the character of the dominant estate are foreseeable and will necessitate changes in the use of a prescriptive easement. We emphasize, however, that any changes in the use of a prescriptive easement cannot result in an unreasonable increased·burden on the servient estate and that the increase in use must be reasonably foreseeable at the time the easement is established." *Gibbens v. Weisshaupt,* 98 Idaho at 639, 570 P.2d at 876.

The record shows that during the prescriptive period Freeman Lane was an un-paved roadway approximately twenty feet in width which was used solely to provide access to three or four homes. In *Gibbens,* the easement in question was previously used only by a single family in order to gain access to their residence and farming operations conducted on the dominant estate. The increased use consisted of a commercial greenhouse and four additional residences. We reversed the trial court's finding that the increased use was not an expansion of the original easement, concluding "as a matter of law" [2] that the use of the easement by both a commercial business and four additional homeowners constituted an impermissible expansion of the easement.

Here, Creekside seeks to increase the burden on the alleged trespass area by providing access to two hundred dwelling units in addition to the four homes which have in the past been serviced by Freeman Lane. We note that this is not a case where several families are building private homes bordering on Freeman Lane. Creekside's development is a commercial endeavor. Creekside seeks to provide residential accommodations for two hundred tenants and to use Freeman Lane as its access. This represents an increase by a factor of approximately fifty. This by far exceeds the increase in use present in the *Gibbens* case which we found resulted in an unreasonable increase in burden on the servient estate. Based on our decision in *Gibbens,* a similar conclusion is compelled here.

## II

The increase in traffic which accompanies the construction of a two hundred unit apartment complex is not the only trespass about which appellant complains. The record reflects, and during oral argument counsel for Creekside conceded, that during the course of this controversy Creekside also improved and enlarged the physical dimensions of Freeman Lane in the alleged trespass area. To what extent the original width of twenty feet was expanded is not clear from the record. Generally, however, any increase in width of a prescriptive easement would constitute an impermissible expansion even if a contemporaneous increase in traffic over the easement would not. An increase in width does more than merely increase the burden upon the servient estate; it has the effect of enveloping additional land.

The trial court below and the respondent on appeal rely heavily on Illustration 1 to Comment b of the Restatement of Property § 479 (1944).[3] We find such reliance to be

---

2. In *Gibbens* this Court stated: "The question of whether the increased use of the road amounts to an 'expansion of the original easement' or merely an 'increase in degree of use' is a question of law. As a matter of law, this increase in use amounted to an expansion of the original easement." *Gibbens v. Weisshaupt,* 98 Idaho at 638, 570 P.2d at 875.

3. "§ 479. Extent of Easements Appurtenant as Affected by Evolution of the Dominant Tenement.

"In ascertaining whether a particular use is permissible under an easement appurtenant created by prescription there must be considered, in addition to the factors enumerated in § 478, the needs which result from a normal evolution in the use of the dominant tenement and the extent to which the satisfaction of those needs increases the burden on the servient tenement.

"Comment:

b. *Normal evolution of condition of dominant tenement.* . . .
"Illustrations:
1. By prescription, A acquires, as appurtenant to Blackacre, a right of way to go by foot

misplaced. First, in the Restatement illustration there was no attendant increase in the physical dimensions of the easement. The Restatement dealt only with an increase in traffic over the surface of the easement. Next, there is a significant difference between an increase in traffic by a factor of ten, as was the case in the Restatement illustration, and an increase in traffic by a factor of fifty, as is the case here. Finally, although we noted in *Gibbens* that our holding was consistent with Restatement §§ 478[4] and 479, we did not state that we would be inexorably bound by the Restatement and its illustrations. *Gibbens v. Weisshaupt*, 98 Idaho at 639, 570 P.2d 876. To the contrary, we held that since rights acquired by prescription should be closely scrutinized and strictly limited, the sections of the Restatement pertaining to the evolution and expansion of easements should be read "narrowly." *Id.* at 639, 570 P.2d at 876.

We conclude that the increased burden caused by Creekside's use constituted an impermissible expansion in the use of the Freeman Lane prescriptive easement and that any widening of Freeman Lane would constitute an impermissible expansion of Creekside's easement. Our conclusion does not, however, completely dispose of the case. The trial court below dismissed appellant's claim for damages before it determined whether or not there did exist a trespass. The court did so on the grounds that no actual damages were proven. However, in cases of trespass to land, the plaintiff need not prove actual harm in order to recover nominal damages. Nominal damages are presumed to flow naturally from a wrongful entry upon land. *Taysom v. Taysom*, 82 Idaho 58, 349 P.2d 556 (1960); *Paurley v. Harris*, 77 Idaho 336, 292 P.2d 765 (1956). Moreover, there was some indica-

tion in the record that the respondent was given notice that its activities constituted a trespass and nonetheless continued construction on the project and widening of Freeman Lane in conscious disregard of the property rights of the appellant. The appellant therefore may be entitled to punitive damages. *See Cox v. Stolworthy,* 94 Idaho 683, 496 P.2d 682 (1972). This Court has in the past held that a plaintiff may recover punitive damages without proving that he is entitled to more than nominal damages. *Village of Peck v. Denison*, 92 Idaho 747, 450 P.2d 310 (1969); *Crystal Dome Oil & Gas Co. v. Savic*, 51 Idaho 409, 6 P.2d 155 (1931). The appellant also requested injunctive relief, which request was foreclosed by the trial court's finding that there was no trespass committed by Creekside. On remand the trial court must resolve these issues.

### III

Since this case was concluded on an I.R. C.P. 41(b) motion, respondent Creekside had no occasion to put on its defense to Aztec's case. In reversing the trial court, we hold only that the trial court erred in dismissing Aztec's action at the close of its case. Respondent should be given the opportunity to rebut appellant's case. For example, respondent argued below and on appeal that the width of the Pocatello Creek Road public right of way was such as to completely encompass the alleged trespass area. The trial court made no specific finding with respect to the width of the Pocatello Creek Road easement. On remand it will be necessary for the trial court to confront this issue and give the defendant an opportunity to support its contention. If the alleged trespass area is completely contained in a different public easement, then the scope

across Whiteacre. Though Blackacre was in the path of a growing city, only one family lived on it during the prescriptive period. Two tenement houses, in each of which five families dwell, have since been built on Blackacre. All of these families may use the way."

**4.** "§ 478. Factors in Ascertaining Extent of Easements Created by Prescription.

"In ascertaining whether a particular use is permissible under an easement created by prescription a comparison must be made between such use and the use by which the easement was created with respect to (a) their physical character, (b) their purpose, (c) the relative burden caused by them upon the servient tenement."

and nature of the Freeman Lane prescriptive easement would no longer be an issue.

The judgment of the trial court dismissing appellant's claim is hereby reversed and the cause is remanded for further proceedings consistent with this opinion.

DONALDSON, C. J., and McFADDEN and BISTLINE, JJ., concur.

SHEPARD, J., dissents without opinion.