829 P.2d 1335

The **VILLAGER CONDOMINIUM ASSOCIATION, INC., a non-profit Idaho corporation; and the New Villager Condominium Association, Inc., a non-profit Idaho corporation, Plaintiffs–Appellants–Cross Respondents,**

v.

**IDAHO POWER COMPANY, a Maine corporation, Defendant-Respondent-Cross Appellant.**

**No. 18377.**

Supreme Court of Idaho,
Boise, November 1990 Term.

March 24, 1992.

Rehearing Denied June 1, 1992.

---

Hawley, Troxell, Ennis & Hawley, Boise, for plaintiffs-appellants-cross respondents. John F. Kurtz, Jr. argued.

Risch, Goss, Insinger & Salladay, Boise, for defendant-respondent-cross appellant. James E. Risch argued.

BISTLINE, Justice.

The issue presented to us is whether a public utility company has the authority to relocate equipment placed on an easement in gross. We hold that the public utility may not relocate its equipment, if the new location constitutes an expansion of the easement, and not merely an increased usage of the easement.

In 1967, the Janss Corporation entered into an agreement (the Janss agreement) with Idaho Power for the supply of power and distribution facilities to condominium developments planned for construction on land owned by the Janss Corporation. In the Janss agreement, the parties understood that the facilities to be supplied by Idaho Power "shall include the overhead primary distribution line at the Company's standard voltage, underground primary cable, when requested by Customer, installed in trenches to be prepared by Customer in accordance with Company's specifications, pole mounted transformers, transformers located in a vault or on a concrete pad, such vault or concrete pad to be constructed by Customer, and overhead service wires from pole mounted transformers to Customer's building." Those developments commonly known as the Villager and New Villager Condominiums were supplied with power through the use of underground cable and twelve transformers placed in underground concrete vaults.

The Janss agreement was never recorded; but recorded plat maps delineate utility easements serving the condominium developments. The two above-named plaintiff

associations (hereinafter Villagers) are the representatives of the current owners of the property that was provided with electrical power through the Janss agreement. In 1985, after the Janss Corporation had sold its interest in the property, Idaho Power removed the underground vaulted transformers and relocated them above ground on concrete pads. The pad-mounted transformers are dark green in color, and in size are approximately 30 inches wide, by 30 inches deep, by 24 inches high.

The Villagers filed two separate complaints against Idaho Power, alleging encroachment, trespass, nuisance and misrepresentation. These actions were consolidated for a bench trial. After two days of trial, the court found that the change of use of the easement was reasonably foreseeable at the time the easement was established, the Villagers' request to modify the court's findings was denied and thereafter the court entered an order denying the Villagers all relief. The Villagers have appealed.

■■■ The general rule is that the use of an easement may not be enlarged to the injury of the servient estate. "An easement, of course, can be enlarged even to the extent that the servient land is injured, but the right to the enlarged use must also be established by prescription, ... or by agreement with the servient landowner." *Merrill v. Penrod*, 109 Idaho 46, 52, 704 P.2d 950, 956 (Ct.App.1985). The underlying issue here is whether the district court's finding that Idaho Power's placement of the transformers above ground was reasonably foreseeable when the easement was established entitling Idaho Power to do so. We conclude that the trial court incorrectly focused on reasonable foreseeability of increased use, rather than on the expansion of the easement.

■■ "In construing an easement in a particular case, the instrument granting the easement is to be interpreted in connection with the intention of the parties, and the circumstances in existence at the time the easement was granted and utilized." *Nelson v. Johnson*, 106 Idaho 385, 387, 679 P.2d 662, 664 (1984); *citing with approval*

to *Quinn v. Stone*, 75 Idaho 243, 270 P.2d 825 (1954). In this case, the recorded plat maps are the instruments which serve to delineate the easement acquired by the utility.

The principles applicable to the extent of use permitted under a grant of easement were recently reiterated in *Abbott v. Nampa School Dist. No. 131*, 119 Idaho 544, 808 P.2d 1289 (1991):

It is well established in this jurisdiction that an easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner. *Sinnett v. Werelus*, 83 Idaho 514, 365 P.2d 952 (1961). In *Coulsen v. Aberdeen-Springfield Canal Co.*, 47 Idaho 619, 277 P. 542 (1929), this Court stated:

The use to which a right of way is devoted or for which it is created, determines the character of title with which the holder is invested. The character of the use or the necessity of complete dominion determines the extent to which [the holder] is entitled to possession. No greater title or right to possession passes under a general grant than reasonably necessary to enable the grantee to adequately and conveniently make the intended use of [the holder's] way. 47 Idaho at 626, 277 P. at 544.

Thus, the general rule concerning easements is that the right of an easement holder may not be enlarged and may not encompass more than is necessary to fulfill the easement....

The degree of change that will be allowed in the use of an easement differs with the manner in which the easement was conveyed, the language of conveyance, and the use of the servient estate before and after the conveyance. *See 5 Restatement of Property* § 483, p. 3010 (1944).

*Abbott*, 119 Idaho at 548, 808 P.2d at 1293.

We agree with the trial court that the Janss agreement has no bearing on the legal problem presented here. The agreement was not recorded. Additionally, the Villagers were not parties to the agree-

ment. Thus the issue presented here is decided without reference to the agreement.

The trial court also concluded that the facts presented did not establish a prescriptive easement. Idaho Power does not challenge this ruling.

The trial court stated that the easement was established by the plats "from which an exact legal description of the easement boundaries can be obtained" and ruled that the Villagers took title to the real property subject to constructive notice of Idaho Power's easement and its intended use implied either by the existence and location of the underground transformers or by the very fact that every condominium owner had obtained a connection with Idaho Power's electrical power.

The trial court acknowledged that allowable changes in Idaho Power's use of the easement could not result in an unreasonably increased burden on the Villagers' property, but that the changed use would be permissible where the changed use was a matter of degree rather than kind. The trial court stated that an increase in the use is allowable if the change is reasonably foreseeable at the time the easement was established and "that the change in use in this case was of a degree reasonably foreseeable by the parties at the time it was established."

In *Gibbens v. Weisshaupt*, 98 Idaho 633, 638, 570 P.2d 870, 875 (1977), the Court held that it was a question of law whether the increased use of a road amounted to an expansion of the original prescriptive easement or merely an increase in the degree of use. The Court emphasized "that any changes in the use of a prescriptive easement cannot result in an unreasonable increased burden on the servient estate and that the increase in use must be reasonably foreseeable at the time the easement is established." 98 Idaho at 639, 570 P.2d at 876. In *Gibbens*, the Court ruled that the increase in use amounted to an expansion of the original easement.

In *Aztec Ltd. v. Creekside Inv. Co.*, 100 Idaho 566, 569, 602 P.2d 64, 67 (1979), the Court held there had been not only an expansion of the use of a prescriptive road easement, but also an increase in the width of the easement. The Court held that this increase in width "would constitute an impermissible expansion even if a contemporaneous increase in traffic over the easement would not." The Court also said, "[a]n increase in width does more than merely increase the burden upon the servient estate; it has the effect of enveloping additional land." *Id.* at 569, 602 P.2d at 67. Foreseeability is irrelevant to this determination.

■ To the extent that the Villagers had constructive notice of Idaho Power's easement by the existence and location of the underground transformers, the foreseeability of additional usage of the easement was an appropriate line of analysis pursuant to *Gibbens*. The question here, however, is not additional usage, but, as was the case in *Aztec*, an expansion of the easement, to wit, placing the transformers above ground. Although the placement of the transformers above ground may have benefitted Idaho Power by reasons of safety, maintenance, and repair as the trial court found, that finding did not suffice to permit Idaho Power's unauthorized expansion of an underground easement into an above ground easement.

The judgment of the district court is reversed and the cause remanded. Costs to appellant; no fees on appeal.

JOHNSON, J., concurs.

McDEVITT, Justice, specially concurring:

■ I concur in the opinion reached by the Court in this case, but must note that I would hold that the trial court erred in its determination that the Janss Agreement had no bearing on the legal issues before it. The Janss Agreement was binding between the parties, *i.e.*, the Idaho Power Company and the Janss Corporation (the predecessor-in-interest to The Villager Condominium Association, and The New Villager Condominium Association, Inc.) As a result of this agreement on the plats filed in connection with the development of The

Villager Condominiums an easement was delineated for the utilities to serve that development. The easement so granted was utilized by the power company, providing power to underground vaults from which the power to the individual condominium units was distributed. The essential part of the opinion of the Court is that dealing with the expansion of an easement in which I fully concur.

BAKES, Chief Justice, dissenting:

■ The majority opinion concludes that the recorded plat maps are the instruments which created the Idaho Power easement, not the Janss agreement. The opinion states, "We agree with the trial court that the Janss agreement has no bearing on the legal problem presented here. The agreement was not recorded. Additionally, the Villagers were not parties to the agreement. Thus the issue presented here is decided without reference to the agreement." *Ante* at 988, 829 P.2d at 1337–1338.

Both the trial court's and the majority's conclusion are contrary to I.C. § 55–815 which provides that, "An unrecorded instrument is valid as between the parties thereto *and those who have notice thereof.*" (Emphasis added.) Since, under I.C. § 55–815, the Janss agreement, which grants an easement to Idaho Power, was valid as between Idaho Power and the Janss Corporation, the issue which both the trial court and the majority should be addressing is whether the Villagers had notice, either actual or constructive, of the Janss agreement. If the Villagers had notice, then under I.C. § 55–815 the Janss agreement was also valid as to the Villagers, and they took the property subject to the easement created by the Janss agreement.

The only function which recording performs is to impart constructive notice of a prior interest in real property, I.C. § 55–811. One who has either actual or constructive notice that an unrecorded interest exists cannot be a bona fide purchaser "in good faith," as provided in I.C. §§ 55–812[1] and –815.[2] *Langroise v. Becker,* 96 Idaho 218, 220, 526 P.2d 178, 180 (1974) ("The purpose of the recording act in a race-notice jurisdiction, like Idaho, is to allow recorded interests to be effective against unrecorded interests when the recorded interest is taken for a valuable consideration and in good faith, *i.e.,* without knowledge, either actual or constructive, that the unrecorded interests exist. *Froman v. Madden,* 13 Idaho 138, 88 P. 894 (1907).").

In this case the Villagers had both actual and constructive notice of the easement created by the Janss agreement, and therefore they were not bona fide purchasers within the meaning of I.C. § 55–812, *Langroise v. Becker, supra,* and they took the property subject to the easement given to Idaho Power in the Janss agreement.

First, the recorded plat maps put the Villagers on constructive notice that a utility easement existed on their property. The utility easements were laid out and labeled "utility easements" on the plats. Second, an inspection of the property would reveal power being supplied to the buildings, putting the Villagers on actual notice that a utility easement to serve their property was present. *See Eagle Rock Corp. v. Idamont Hotel Co.,* 59 Idaho 413, 436, 85 P.2d 242, 251 (1938) ("The easement and use thereof was apparent from a mere examination of the premises.").

Because the Villagers had both actual and constructive notice of the utility easement on their property, with that notice, our cases say that the Villagers had the responsibility to determine the nature and scope of the easement of which they had notice. In *Hill v. Federal Land Bank,* 59 Idaho 136, 141, 80 P.2d 789, 791 (1938), this Court stated, "[W]hatever is notice enough

---

1. **55–812. Unrecorded conveyance void against subsequent purchasers.**—Every conveyance of real property other than a lease for a term not exceeding one (1) year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded.

2. **55–815. Unrecorded instruments valid between parties.**—An unrecorded instrument is valid as between the parties thereto and those who have notice thereof.

to excite the attention of a man of ordinary prudence and prompt him to further inquiry, amount to notice of all such facts as a reasonable investigation would disclose." *Fenton v. King Hill Irr. Dist.*, 67 Idaho 456, 186 P.2d 477 (1947); *Farrell v. Brown*, 111 Idaho 1027, 729 P.2d 1090 (Ct.App. 1986); *Comstock Inv. Corp. v. Kanisksu Resort*, 117 Idaho 990, 793 P.2d 222 (Ct. App.1990). An inquiry to Idaho Power would have disclosed the scope and purpose of the easement given to Idaho Power in the Janss agreement, which allowed for transformers to be placed on top of the ground. Therefore, because "utility easements" were laid out and labeled on the recorded plat maps, and because of the actual presence of electric utilities on the premises, the Villagers were on inquiry notice to determine the nature and scope of the Idaho Power easement created by the Janss agreement. *Treasure Valley Bank v. Butcher*, 117 Idaho 974, 793 P.2d 206 (1990); *Fajen v. Powlus*, 96 Idaho 625, 533 P.2d 746 (1975); *Checketts v. Thompson*, 65 Idaho 715, 721, 152 P.2d 585, 587 (1944) ("One who purchases land expressly subject to an easement or with notice, actual or constructive, that it is burdened with an existing easement, takes the land subject to the easement." *Citing* 28 C.J.S. § 48 at 711.).

The Court states that "the recorded plat maps are the instruments which serve to delineate the [word omitted] acquired by the utility." However, even a casual examination of the plat maps discloses that they did not create the easements because they do not sufficiently satisfy the requirements of I.C. §§ 9–503[3] and 55–601,[4] to constitute a conveyance of an easement to anybody. First, there was no language anywhere on the plat map "granting" a conveyance of an easement. There is no grantee named. Under I.C. § 9–503 a conveyance of an interest in real property requires an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing. There are two separate plats in the record in this case, Plaintiffs' Exhibit 1 for the Villager Condominiums and Plaintiffs' Exhibit 2 for the New Villager Condominiums. Regarding Exhibit 1, the Villager Condominium plat, it has lines drawn on it which are described as "utility easements 4' wide." On Exhibit 2, the New Villager Condominium plat, there are lines drawn which the legend describes as "utility easements unless otherwise noted," but there is no indication of their width. Neither of the two plats sets out a metes and bounds legal description of the locations of the easements. Neither plat refers to a grantee or identifies who the "utility" is. The most that the recorded plats do is to put the Villagers on notice that there is a utility easement on their property. However, that easement is not created by the plat. It is created by the Janss agreement.[5]

The power line easement described in the Janss agreement granted "a right of way and easement for the erection and continued operation, maintenance, repair, alteration, inspection and replacement of the electric transmission, and distribution and circuits of the Grantee, attached to poles or

---

3. **9–503. Transfers of real property to be in writing.**—No estate or interest in real property, other than for leases for a term not exceeding one (1) year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.

4. **55–601. Conveyance—How made.**—A conveyance of an estate in real property may be made by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing. The name of the grantee and his complete mailing address must appear on such instrument.

5. The majority opinion states that, in addition to the Janss agreement not having any bearing on the legal problem because of not being recorded, the opinion also states that the Janss agreement has no bearing on the legal problem presented here because "the Villagers were not parties to the agreement." If the Janss agreement has no bearing upon the legal problem because the Villagers were not parties to it, then the same reasoning would preclude the recorded plats from having any bearing on the legal problem presented here because the Villagers were not parties to the plats either.

other supports together with guys, cross-arms and other attachments and incidental equipment thereon, and appurtenances, for the transmission of electric energy necessary to the Grantor pursuant to the Agreement ... *over, on and across* the following premises...." The power line easement granted in the Janss agreement gave Idaho Power an easement "over, on and across the property" which the Villagers acquired. That language clearly authorized Idaho Power to locate the transformers on top of the ground. *Abbott v. Nampa School Dist. No. 131*, 119 Idaho 544, 808 P.2d 1289 (1991). Therefore, the trial court correctly concluded that Idaho Power's easement authorized it to locate the transformers on the ground, even though its conclusion that the easement was not created by the Janss agreement was erroneous. Accordingly, I would affirm the trial court's decision because, on this record, the Villagers had notice, both actual and constructive, of Idaho Power's easement and therefore were bound by the terms of the Janss agreement which their predecessor in title, Janss, had executed.

BOYLE, Justice, dissenting.

I join the dissent of the Chief Justice and because the question of enlargement of an easement is a question of fact, I respectfully register my own separate dissent.

In my view, the controlling issue in this case involves the appropriate standard of review that this Court should apply. Our recent cases clearly hold that the question of enlargement of an easement is one of fact to be determined by the trier of fact. In a unanimous opinion, we recently held in *Kolouch v. Kramer*, 120 Idaho 65, 813 P.2d 876 (1991), that

> [t]he question of whether a particular use of an easement is reasonable and commensurate with the intention of the parties when the easement was granted is generally a question of fact for the trial court and its findings will not be disturbed if supported by substantial and competent evidence.

*Kolouch*, 120 Idaho at 69, 813 P.2d at 880 (citations omitted.)

Because the findings in *Kolouch* were supported by substantial evidence, we affirmed the trial court's decision that the intention of the original parties to an easement contemplated that a road would be built to accommodate a commercial development. *Id.*

Similarly, in *Abbott v. Nampa School District*, 119 Idaho 544, 808 P.2d 1289 (1991), another case without dissent and directly on point with this instant action, we set forth our appellate function in easement cases when the question of enlargement is presented. We stated:

> In our review of a trial court decision the respective roles assigned to the courts must be kept in mind. At the trial court level the trier of fact, in this case the district court judge, is the arbiter of conflicting evidence. It is the province of the district judge as the trier of fact to weigh the conflicting evidence and testimony and to judge the credibility of witnesses. In view of this role, the trial court's findings of fact will be liberally construed in favor of the judgment entered....
>
> Our review of the record satisfies us that the findings of the trial court are based on substantial, competent evidence and will not be disturbed on appeal. The trial court expressly found that the school district's use of the easement did not constitute an enlargement of the use or an unreasonable increase in the burden of the easement on the servient estate. Our review of the record does not demonstrate that the findings made by the trial court are clearly erroneous and accordingly will not be set aside on appeal.

*Abbott*, 119 Idaho at 547–48, 808 P.2d at 1292–93 (citations omitted.)

Thus, there should be no debate concerning whether the issue of enlargement of an easement is one of fact and that we should apply the clearly erroneous standard of review. I acknowledge that the cases cited by the majority appear to indicate that the question of enlargement is one of law. *See Aztec Ltd., Inc. v. Creekside Investment Co.*, 100 Idaho 566, 602 P.2d 64 (1979);

*Gibbens v. Weisshaupt,* 98 Idaho 633, 570 P.2d 870 (1977). However, the standard enunciated in those opinions, borrowing a standard from the California Court of Appeals in *Gaither v. Gaither,* 165 Cal.App.2d 782, 332 P.2d 436 (1958), has not been subsequently followed. To the extent *Aztec* and *Gibbens* are inconsistent with the standard we have announced in *Kolouch v. Kramer* and *Abbott v. Nampa School District,* they have been overruled *sub silentio.*

Applying the clearly erroneous standard of review to the factual determination of the district court in this case, I conclude that the court's determination "that the change in use in this case was of a degree reasonably foreseeable by the parties at the time it was established" is supported by substantial evidence in the record and is not clearly erroneous. Therefore, I would affirm the district court's judgment.

Accordingly, I respectfully dissent.