954 P.2d 676

**Vicki MEISNER, Individually and as personal representative of the Estate of Howard Gene Weatherly, Plaintiff-Appellant,**

v.

**POTLATCH CORPORATION, A Delaware Corporation, and Robert House, Defendants-Respondents.**

No. 22974.

Supreme Court of Idaho,
Boise, October 1997 Term.

Feb. 27, 1998.

Aherin, Rice & Anegon; McCann Law Office, Lewiston, for Plaintiff–Appellant. Darrel W. Aherin argued.

Clements, Brown & McNichols, Lewiston, for Defendants–Respondents. Michael E. McNichols argued.

TROUT, Chief Justice.

This is an appeal of a dismissal for lack of subject matter jurisdiction of negligence and wrongful death claims arising from the death of a worker covered by worker's compensation. In addition, this appeal determines whether Idaho's worker's compensation statutes which deny death benefits to independent adult children of deceased workers, and private pension plans paying pre-retirement death benefits only to the spouses of deceased workers, violate constitutional equal protection rights.

## I.

## BACKGROUND

On the morning of July 29, 1994, Howard Weatherly, appellant Vicki Meisner's father, was killed while working at Potlatch's Jaype Mill when two bundles of plywood fell on him. The bundles fell on Weatherly as Robert House was attempting to lift them off a stack using a forklift.

In compliance with Idaho's worker's compensation statutes, Potlatch's surety paid Weatherly's estate for burial and ambulance expenses and those are not at issue here.

The worker's compensation statutes also provide a death benefit for named, dependent family members of workers killed on the job. I.C. § 72–413. At his death, Weatherly was unmarried and survived by three adult children and nine grandchildren, none of whom were dependent on him for support. Because none of Weatherly's heirs was eligible to receive a death benefit under § 72–413, Potlatch's surety deposited $10,000.00 in the State's Industrial Special Indemnity Account pursuant to I.C. § 72–420.

As part of his employment benefits, Weatherly was provided with a life insurance policy and two retirement plans. The proceeds of the life insurance policy were paid to Weatherly's son, Dan Weatherly, the designated beneficiary. Weatherly also participated in a 401(k) plan in which he could purchase shares of Potlatch stock. The value of the stock in Weatherly's 401(k) account was paid to Meisner and Dan Weatherly. The remaining pension plan was the result of a collective bargaining agreement between Potlatch and the International Woodworkers of America of which Weatherly was a member. Potlatch made all contributions to this plan. Under the terms of the plan, no death benefits were payable if an unmarried participant died prior to retirement.

Meisner filed a complaint, individually and as the personal representative of her father's estate, in Clearwater County district court against Potlatch and House alleging negligence and wrongful death. In addition, the complaint sought a declaratory judgment on the constitutionality of I.C. § 72–413 and the Potlatch retirement plan. Specifically, Meisner contended that § 72–413 violated the equal protection clauses of the United States and Idaho Constitutions by discriminating on the basis of dependancy. Meisner further contended the Potlatch pension plan denied equal protection on the basis of marital status. Potlatch and House moved for summary judgment under I.R.C.P. 56(b) and moved to dismiss pursuant to I.R.C.P. 12(b)(1) and 12(b)(6). Following a hearing, the district court dismissed Meisner's negligence and wrongful death claims on the basis of lack of subject matter jurisdiction. The district court also held that the worker's compensation provisions in question were constitutional. Finally, the district court granted summary judgment for Potlatch as to the retirement benefits based upon preemption by the Employer Retirement Income and Security Act (ERISA) and based upon the fact that the retirement plan was a private contract whose terms did not provide for benefits to be paid to Meisner. Meisner appealed.

## II.

### STANDARD OF REVIEW

When faced with an appeal from summary judgment, this Court must determine whether the pleadings, depositions, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. The non-moving party is to be given the benefit of all favorable inferences which reasonably might be drawn from the evidence, and all doubts are to be resolved against the moving party. The motion must be denied if the evidence is such that conflicting inferences may be drawn therefrom and if reasonable people might reach different conclusions.

*Farmers Nat'l. Bank v. Shirey,* 126 Idaho 63, 67–68, 878 P.2d 762, 766–67 (1994) (citations omitted).

Whether a court has properly dismissed a case for lack of jurisdiction pursuant to I.R.C.P. 12(b)(1) is a question of law over which this Court exercises free review. *Downey Chiropractic Clinic v. Nampa Restaurant Corp.,* 127 Idaho 283, 285, 900 P.2d 191, 193 (1995). Constitutional issues are purely questions of law over which this Court exercises free review. *Harris v. State Dept. of Health & Welfare,* 123 Idaho 295, 297, 847 P.2d 1156, 1158 (1992).

## III.

### NEGLIGENCE AND WRONGFUL DEATH CLAIMS

Meisner challenges the district court's dismissal of her negligence and wrongful death claims for lack of jurisdiction. The

district court based its decision on prior decisions of this Court that the worker's compensation statutes provide the exclusive remedy for workers injured on the job. *See, Van Tine v. Idaho State Ins. Fund*, 126 Idaho 688, 889 P.2d 717 (1994). Idaho Code sections 72–201 and 72–211 vest exclusive jurisdiction for claims for injuries arising out of and sustained during the course of employment in the Industrial Commission. *Henderson v. State*, 110 Idaho 308, 715 P.2d 978 (1986). This includes claims brought by the survivors of workers killed on the job. *Stample v. Idaho Power Co.*, 92 Idaho 763, 450 P.2d 610 (1969). We therefore find no error in the district court's dismissal of the negligence and wrongful death claims on the basis of lack of jurisdiction.

## IV.

## CONSTITUTIONAL CLAIMS

### A. Equal Protection Claim

■ Meisner argues that I.C. § 72–413 violates the equal protection clauses of the Fourteenth Amendment to the United States Constitution and Art. I, §§ 1 and 2 of the Idaho Constitution because, while dependent children of deceased workers are provided a benefit under the statute, independent adult children are left without a remedy. We note at the outset that "[i]t is generally presumed that legislative acts are constitutional, that the state legislature has acted within its constitutional powers, and any doubt concerning interpretation of a statute is to be resolved in favor of that which will render the statute constitutional." *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990) (citations omitted). Thus, the burden of overcoming the presumption of validity of the statute rests on Meisner. *Id.*

■ Equal protection claims require a two-step analysis. The reviewing court must first, identify the classification which is being challenged and second, determine the standard under which the classification will be reviewed. *Tarbox v. Tax Comm'n.*, 107 Idaho 957, 959, 695 P.2d 342, 344 (1984). At oral argument, counsel for both sides agreed that in this case the classification was based on dependancy; that is, children of a worker covered by the worker's compensation act who are dependent, as opposed to children of a covered worker who are not dependent.

■ For equal protection challenges to statutes based on the Fourteenth Amendment, three levels of scrutiny are used. These are strict scrutiny, intermediate scrutiny and the rational basis tests. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–42, 105 S.Ct. 3249, 3254–55, 87 L.Ed.2d 313 (1985). The analysis of equal protection claims under the Idaho Constitution is very similar. "Three standards of equal protection analysis have been recognized in Idaho: strict scrutiny, means-focus, and rational basis." *Leliefeld v. Johnson*, 104 Idaho 357, 373, 659 P.2d 111, 127 (1983) (citation omitted). Meisner concedes that strict scrutiny is not appropriate since neither a fundamental right nor a suspect class is involved. Instead, Meisner argues that the intermediate scrutiny/means-focus standard should be applied, while Potlatch argues that the rational basis test is appropriate.

To survive analysis under the intermediate scrutiny test, a classification "must serve important governmental objectives and must be substantially related to achievement of those objectives." *Craig v. Boren*, 429 U.S. 190, 197, 97 S.Ct. 451, 457, 50 L.Ed.2d 397 (1976). The United States Supreme Court, however, has applied intermediate scrutiny only to classifications involving either gender (*Craig*) or illegitimacy (*Mills v. Habluetzel*, 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982)). Since the classification at issue here involves neither gender nor illegitimacy, intermediate scrutiny is not the proper standard for analysis under the Fourteenth Amendment.

■ The means-focus test, while similar to the intermediate scrutiny test, has not been limited by Idaho courts to cases involving gender and illegitimacy; rather it has been applied to cases "where the discriminatory character of a challenged statutory classification is apparent on its face and where there is also a patent indication of a lack of relationship between the classification and the declared purpose of the statute...." *Jones v. State Bd. of Med.*, 97 Idaho 859, 871, 555 P.2d 399, 411 (1976). This Court, howev-

er, "has limited review under [the means-focus] standard to statutes of a blatantly discriminatory nature." *Tarbox*, 107 Idaho at 960, 695 P.2d at 345 (1984). Economic and social welfare legislation, such as the worker's compensation statutes, are not subject to the means-focus test unless they create a suspect or invidiously discriminatory classification or involve a fundamental right. *Rhodes v. Industrial Comm'n.*, 125 Idaho 139, 142, 868 P.2d 467, 470 (1993). Because we find that the statute in question does not involve a fundamental right and that a classification based on dependancy is not invidiously discriminatory, we decline to apply the means-focus test. Thus, in examining this issue under either the United States or Idaho constitutions, we apply a rational basis analysis.

■ Under either the Fourteenth Amendment or the Idaho Constitution, a classification will survive rational basis analysis if the classification is rationally related to a legitimate governmental purpose. *Lyng v. International Union, U.A.W.*, 485 U.S. 360, 108 S.Ct. 1184, 99 L.Ed.2d 380 (1988); *Idaho Schools for Equal Educ. v. Evans*, 123 Idaho 573, 850 P.2d 724 (1993). "Under the 'rational basis test,' a classification will withstand an equal protection challenge if there is any conceivable state of facts which will support it." *Bint v. Creative Forest Prod.*, 108 Idaho 116, 120, 697 P.2d 818, 822 (1985) (citations omitted). Meisner argues that because the statute does not provide for the independent children of deceased workers, it is not rationally related to the purpose of providing "sure and certain relief for injured workmen and their families and dependents." I.C. § 72–201.

■ Worker's compensation statutes must be considered in the context of the entire act. *Arneson v. Robinson*, 59 Idaho 223, 82 P.2d 249 (1938). The purpose of the worker's compensation act is not only to provide relief for workers but also to protect industry by providing a limit on liability. By limiting the class of people who can collect benefits, § 72–413 arguably protects Idaho industry by providing some degree of certainty in terms of liability. In addition, when considered as a whole, it is clear that worker's compensation statutes are designed to compensate on the basis of need. Because the intent of the statutes is to provide for loss of monetary support, we find it both rational and reasonable for the legislature to limit benefits to those individuals who were truly dependent on the deceased worker. We, therefore, find no error in the district court's holding that I.C. § 72–413 does not violate equal protection.

## B. Article III, Section 19

In addition to her equal protection challenge, Meisner contends that I.C. § 72–413 violates Art. III, § 19 of the Idaho Constitution which prohibits the passage of special laws. Potlatch argues that the Court should not consider this issue since it was not specifically raised before the district court. The record before us shows that in district court Meisner argued only that I.C. § 72–413 violated equal protection and not that it was a special law in violation of Art. III, § 19 of the Idaho Constitution. "This Court will not consider issues that are raised for the first time on appeal." *Henderson v. Smith*, 128 Idaho 444, 451, 915 P.2d 6, 13 (1996) (citation omitted). We therefore decline to address Meisner's argument that I.C. § 72–413 is a special law.

## V.

## PENSION PLAN

■ We begin by noting that the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461, precludes courts from entertaining state law claims arising from employee benefit plans. *Joanou v. Coca–Cola Co.*, 26 F.3d 96, 99 (9th Cir.1994). "ERISA contains one of the broadest preemption clauses ever enacted by Congress." *Id.* (citations omitted). Since Meisner is neither a participant nor a beneficiary of the pension plan, she has no remedy under ERISA. Meisner attempts to circumvent the ERISA preemption by claiming that the pension plan violates the Fourteenth Amendment by discriminating on the basis of marital status.

■ It is well settled that a violation of the Fourteenth Amendment requires state action. *The Civil Rights Cases*, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883). Citing *Shelley*

*v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), Meisner argues that the state action requirement was met by the district court's grant of summary judgment in favor of Potlatch. Under Meisner's theory, any party to a private contract could invoke the Fourteenth Amendment simply by filing an action in state court. We decline to give *Shelley* the broad reading that Meisner urges upon us. Even if *Shelley* applied, it is clearly distinguishable. *Shelley* involved the issuance of an injunction to force the parties to abide by the terms of a racially restrictive covenant, not a grant of summary judgment. In addition, *Shelley* involved a classification based on race not marital status.

The pension plan in question was clearly a private contract between Potlatch and Meisner's father acting through his agent, the International Woodworkers of America. The grant of summary judgment by the district court did not constitute state action sufficient to support a claim for violation of the Fourteenth Amendment. Therefore, the district court did not err in granting summary judgment to Potlatch on the pension plan claim.

## V.

### ATTORNEY FEES

On appeal, Potlatch seeks an award of attorney fees. The only argument on this issue was a single conclusory sentence in the "Conclusion" section of Potlatch's brief. This Court will not consider issues cited on appeal that are not supported by propositions of law, authority or argument, *Saint Alphonsus Reg'l. Med. Ctr. v. Bannon,* 128 Idaho 41, 910 P.2d 155 (1995), thus we decline to consider the issue of attorney fees.

## VI.

### CONCLUSION

For the reasons stated above, the decision of the district court is affirmed. Costs on appeal to respondent.

JOHNSON, SILAK, SCHROEDER and WALTERS, JJ., concur.