960 P.2d 1258

**Betty PHINNEY, Claimant–Appellant,**

v.

**SHOSHONE MEDICAL CENTER, employer, and State Insurance Fund, surety, Defendants,**

**and**

**State of Idaho, Industrial Special Indemnity Fund, Defendant–Respondent.**

No. 23659.

Supreme Court of Idaho, Coeur D'Alene, April 1998 Term.

June 30, 1998.

Michael J. Vrable, Hayden, for appellant. Michael J. Vrable argued.

Mallea & Scrivner, Boise, for respondent. Kenneth L. Mallea argued.

TROUT, Chief Justice.

This is an appeal from the Industrial Commission's order with respect to Betty Phinney's (Phinney) motion for determination of the Industrial Special Indemnity Fund's (ISIF) benefit assessment.

## I.

## BACKGROUND

Phinney filed a worker's compensation complaint after she was injured at her place of employment, claiming that she was totally and permanently disabled pursuant to the odd-lot doctrine. A hearing was held before a referee for the purpose of determining whether Phinney was totally and permanently disabled, the apportionment of Phinney's disability benefits, and whether Phinney had refused to accept suitable work. During the hearing, testimony was presented that Phinney was working 20 hours per week and earning $5.17 per hour at the time of her injury. The referee determined that Phinney was totally and permanently disabled as an odd-lot worker, and, because of her pre-existing injury, the ISIF would be responsible for a portion of her benefits.

On May 10, 1996, the Industrial Commission adopted the referee's findings of fact and conclusions of law, and incorporated them into an order. In the findings of fact, the Commission stated that Phinney was earning $5.17 per hour and working 20 hours per week at the time of her injury. The order stated that it was a final decision as to all matters adjudicated. On November 6, 1996, Phinney filed a motion for determination of the ISIF's benefit assessment, stating that the Industrial Commission had not determined Phinney's average weekly wage in its order dated May 10, 1996. The Commission ruled that it had already determined Phinney's average weekly wage to be $103.40, referring to its factual findings as to her hourly wage and the number of hours she worked per week. The Industrial Commission stated that because Phinney had not moved to reconsider the Commission's order or appealed the order to the Idaho Supreme Court, she is now bound by the Commission's findings as to her average weekly wage.

## II.

### STANDARD OF REVIEW

■ In reviewing an appeal from the Industrial Commission, the Court will uphold the Commission's findings if they are supported by substantial and competent evidence, but will freely review issues of law. *Palomo v. J.R. Simplot Co.*, 131 Idaho 314, 315, 955 P.2d 1093, 1094 (1998) (citing *Smith v. J.B. Parson Co.*, 127 Idaho 937, 941, 908 P.2d 1244, 1248 (1996)).

## III.

### PHINNEY'S AVERAGE WEEKLY WAGE

■ Phinney contends that the Industrial Commission did not determine her average weekly wage in its order dated May 10, 1996, emphasizing that her average weekly wage was not listed as an issue to be resolved during the hearing. The ISIF argues that the Commission's specific factual findings as to Phinney's hourly rate of pay and the number of hours she worked per week constituted a determination of her average weekly

wage even though the Commission did not specifically list Phinney's average weekly wage as an issue for resolution. Furthermore, the ISIF claims that because Phinney did not timely object below to the Commission's factual findings, she is bound by them and cannot now challenge them on appeal.

Phinney filed a workers' compensation complaint for the purpose of obtaining disability benefits. In the box on the complaint form entitled "when injured claimant was earning an average weekly wage of," Phinney responded "$5.17 an hour." While the employer admitted that statement, the surety denied it in its answer to the complaint. At the start of the hearing on Phinney's complaint, the referee stated that the issues to be decided were: (1) whether the claimant has any disability in excess of her impairment, to include whether or not the claimant is totally and permanently disabled; (2) apportionment of disability; and (3) whether the claimant refused to accept suitable work. The record does not reflect any objection by Phinney to the referee's statement of the issues to be determined. During the course of the hearing, testimony was presented that Phinney was working 20 hours per week and earning $5.17 per hour at the time of her injury. The referee made factual findings and conclusions of law, which were adopted by the Commission and incorporated into an order on May 10, 1996. The following factual findings were included in the Commission's order:

Claimant was unemployed from the time Henry L. Day Hospital closed until September 3, 1991 when she obtained work at Shoshone Medical Center, hereinafter referred to as Employer, as a cook/kitchen aide. Her rate of pay was $5.17 per hour. She understood when she took the position that it was going to be a full-time job, however, it was not full-time. Claimant was working 20 hours per week. On September 22, 1991, her pay was decreased to $4.50 per hour due to financial constraints of the hospital.

Pursuant to I.C. §§ 72–408 and 72–409, the Industrial Commission's determination of Phinney's disability benefits requires knowledge of her average weekly wage. *See gen-*

*erally* I.C. §§ 72–408 and 72–409. Because the calculation of Phinney's average weekly wage is clearly part of the determination of her benefits, any findings by the Commission that relate to Phinney's average weekly wage are binding on the parties. Here, the Commission's order contained specific factual findings as to Phinney's hourly wage, $5.17 per hour, and the number of hours she worked per week, 20 hours per week.

Phinney had an obligation to state in her complaint the amount she contended was her average weekly wage, and she had an obligation to indicate to the referee that the benefits calculation was an issue to be resolved at the hearing based upon the surety's denial in its answer. At a minimum, Phinney had an obligation to object to the referee's findings as to her hourly wage and the number of hours she worked per week if she disagreed with them. Because Phinney did not indicate to the referee prior to the hearing that her benefits calculation was a disputed issue, or move for reconsideration or rehearing under I.C. § 72–718, she is bound by the Commission's findings and cannot now challenge them on appeal.

Based on the above, we find that the Industrial Commission did determine Phinney's average weekly wage in its order dated May 10, 1996. We will not consider Phinney's present challenge to the Commission's findings as to her hourly wage and the number of hours she worked per week because she did not timely object below to these findings.

## IV.

### CONSTITUTIONALITY OF I.C. §§ 72–408 AND 72–409

■ Phinney argues that I.C. §§ 72–408 and 72–409 violate the equal protection clause of the Idaho and United States Constitutions because they treat workers earning a lower rate of pay differently than workers earning a higher rate of pay. The ISIF asserts that Phinney lacks standing to challenge the constitutionality of these statutes because she benefits from their application in that she receives greater compensation under these statutes than she received while employed. In addition, the ISIF claims that

I.C. §§ 72–408 and 72–409 are not unconstitutional because the differing treatment of low-wage workers and high-wage workers is rationally related to the legitimate purpose of compensating injured workers in rough proportion to their pre-injury wage.

■ A party has standing to raise a constitutional challenge if the party has "alleged such a personal stake in the outcome of the controversy as to assure the concrete adversariness which sharpens the presentation upon which the court so depends for illumination of difficult constitutional questions." *Miles v. Idaho Power Co.,* 116 Idaho 635, 641, 778 P.2d 757, 763 (1989) (quoting *Duke Power Co. v. Carolina Env. Study Group,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978)). In other words, the party must "allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Id.* (quoting *Duke Power Co.,* 438 U.S. at 79, 98 S.Ct. at 2633)). The ISIF alleges that Phinney lacks standing to challenge I.C. §§ 72–408 and 72–409 because she receives greater compensation under these statutes than she earned while employed. The ISIF incorrectly focuses on a comparison between Phinney's financial situation before her injury versus her financial situation after her injury. However, the proper inquiry in this case is whether Phinney is harmed by the application of I.C. §§ 72–408 and 72–409 as compared to other workers receiving benefits under these statutes. Because Phinney receives less compensation under I.C. §§ 72–408 and 72–409 than workers who earned higher wages prior to their injury, she has standing to challenge these statutes.

Legislative acts are generally presumed to be constitutional, and thus, Phinney bears the burden of overcoming the presumption of the validity of I.C. §§ 72–408 and 72–409. *Meisner v. Potlatch Corp.,* 131 Idaho 258, 261, 954 P.2d 676, 679 (1998) (quoting *Olsen v. J.A. Freeman Co.,* 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990)). Section 72–408 provides the formula for determining the income benefits of an employee who is totally or partially disabled. *See* I.C. § 72–408. Section 72–409 defines the maximum and mini-

mum income benefits permissible for an employee who is totally disabled. *See* I.C. § 72–409. Both section 72–408 and section 72–409 consider an employee's average weekly wage in determining the amount of the employee's income benefits.

 We have previously determined that constitutional challenges to worker's compensation statutes are subject to a rational basis analysis. *Meisner,* 131 Idaho at 261–62, 954 P.2d at 679–80. Under either the United States Constitution or the Idaho Constitution, a classification will survive rational basis analysis if the classification is rationally related to a legitimate governmental purpose. *Id.* at 262, 954 P.2d at 680 (citations omitted). The worker's compensation act is designed to provide relief for workers who have suffered a loss of financial support. *Id.* Because the amount of an employee's financial loss is dependent upon the employee's wages prior to his/her injury, it is reasonable for the legislature to consider the employee's average weekly wage in determining benefits under I.C. §§ 72–408 and 72–409. The difference in benefits between workers earning higher rates of pay and workers earning lower rates of pay is rationally related to the legislature's legitimate goal of compensating injured workers in proportion to their financial loss. Thus, we find that I.C. §§ 72–408 and 72–409 do not violate the equal protection clause of the Idaho Constitution or the United States Constitution.

## V.

## CONCLUSION

We affirm the Industrial Commission's order with respect to Phinney's motion for determination of the ISIF's benefit assessment. First, we find that the Industrial Commission did determine Phinney's average weekly wage in its order dated May 10, 1996, and that Phinney is bound by that determination because she did not timely object to the Industrial Commission's findings. Second, we find that I.C. §§ 72–408 and 72–409 do not violate the equal protection clause of the Idaho Constitution or the United States

Constitution. We award costs on appeal to respondent ISIF.

JOHNSON, SILAK, SCHROEDER and WALTERS, JJ., concur.