# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 47029 / 47071 / 47086

NAMPA HIGHWAY DISTRICT NO. 1, a body politic corporate of the State of Idaho,

    Plaintiff-Respondent,

v.

BRIAN K. KNIGHT and LISA M. KNIGHT, husband and wife; MANUEL DOMINGUEZ and MARIA DOMINGUEZ, husband and wife,

    Defendants-Appellants,

and

CHICAGO TITLE INSURANCE COMPANY, et al,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2020 Term

Opinion filed: April 17, 2020

Karel A. Lehrman, Clerk

Docket No. 47029

NAMPA HIGHWAY DISTRICT NO. 1, a body politic corporate of the State of Idaho,

    Plaintiff-Respondent,

v.

QUICKEN LOANS INC., a Michigan corporation;

    Defendant-Appellant,

and

BRIAN K. KNIGHT, et al,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Docket No. 47071

1

| | |
|---|---|
| NAMPA HIGHWAY DISTRICT NO. 1, a body politic corporate of the State of Idaho, | ) ) ) |
| Plaintiff-Respondent, | ) ) |
| v. | ) ) |
| | ) **Docket No. 47096** |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation, | ) ) ) |
| | ) |
| Defendant-Appellant, | ) ) |
| and | ) ) |
| BRIAN K. KNIGHT, et al. | ) ) |
| Defendants. | ) ) |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. George A. Southworth, District Judge.

The judgment of the district court granting summary judgment is <u>reversed</u>, its declaration as to the status of the right-of-way is <u>vacated</u>, and the case is <u>remanded</u>.

Davison, Copple, Copple & Copple, LLP, Boise, for Appellants Manuel and Maria Dominguez. E. Don Copple argued.

Angstman Johnson, Boise, for Appellants Brian and Lisa Knight and Quicken Loans, Inc. Wyatt B. Johnson argued.

Hawley Troxell Ennis & Hawley, LLP, Boise, for Appellant Mortgage Electronic Registration Systems, Inc.

Jones Williams Fuhrman Gourley, PA, Boise, for Respondent. Kimbell D. Gourley argued.

---

MOELLER, Justice

Nampa Highway District No. 1 (NHD) brought this action against the named defendants seeking to quiet title to a thirty-three-foot-wide strip of land constituting the south half of West

Orchard Avenue in Canyon County, Idaho. NHD claims that a 1941 deed conveyed the land to NHD. Appellants[1] argued that because the deed was not recorded until 1989, it does not affect their interests pursuant to the "Shelter Rule," which protects a purchaser with notice if their predecessor in interest was an innocent purchaser. The district court granted summary judgment in NHD's favor. Appellants timely appealed. For the reasons stated below, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

This case involves the real property located at 2505 West Orchard Avenue, Nampa, Idaho, currently owned by Appellants Brian and Lisa Knight (the Knight Property), and the real property located at 2403 West Orchard Avenue, Nampa, Idaho, currently owned by Appellants Manuel and Maria Dominguez (the Dominguez Property). Years prior, the Knight Property and the Dominguez Property were part of a larger tract of land (the Property), with the known chain of title starting with W.A. and Lou Dedman in 1920.

On April 5, 1920, the Dedmans transferred their interest in the Property to Ora Lupton by deed. The deed was recorded on May 12, 1920.

In 1921, West Orchard Avenue (the Road) was constructed along the front of the Property as a twenty-two-foot-wide two-lane road. This portion of the Road has remained twenty-two feet in width since 1921.

Approximately twenty years later, on June 2, 1941, NHD held a board meeting wherein a delegation appeared seeking to put the Road in condition for oiling. The minutes from the meeting explain that "Commissioners set Thursday afternoon, June 5th, as a time for visiting this road and asked that deeds for right of way for 66-foot road be secured." A couple months later, NHD held another board meeting. The minutes from the meeting explain that

> [a] committee from Orchard Avenue again appeared to learn of steps taken to improve Orchard Avenue Road. It was learned that an engineer had done some work on this road to establish center lines, and the Committee was definitely told that they should submit Right of Way deeds for thirty-three feet on each side of center of road to establish this road before definite plans be made to improve the road. The deeds were to be filed in the office of the Nampa Highway District.

---

[1] As used herein, "Appellants" refers to all of the named defendants except for Chicago Title Insurance Company.

On August 4, 1941, J.G. and Ora Lupton conveyed a thirty-three-foot-wide strip of land on each side of the centerline of the Road to NHD via a Deed of Right-of-Way. However, NHD *did not* record the deed at that time. The Deed of Right-of-Way states:

> Whereas, it is desirable, proper, and necessary that a public highway be laid out and opened for public use 33 feet wide on each side of a line, commencing at a point in the intersection of the center line of the existing public highway with the section line between Sections 19 and 20 in Township 3 N. R. 2. W. R. M. thence Easterly along said North Boundary line of Section 20 a strip of land 33 feet wide and extending thence Easterly distance of 2640 feet more or less along the North boundary line of the Northwest Quarter of Section 20.

Although the purpose of the conveyance was to "improve the road," NHD never improved the road.

In 1945, Ora Lupton died and the probate of her estate resulted in the transfer of her interest in the Property to her surviving spouse, J.G. Lupton. J.G. Lupton died in 1958, and the probate of his estate resulted in the transfer of his interest in the Property to his heirs, Howard Lupton and Marvin Lupton. The same day it was transferred by the estate, Marvin Lupton transferred his interest in the Property to Howard Lupton. Howard Lupton divided the Property into several parcels, including those that eventually became the Knight Property and the Dominguez Property.

On June 21, 1963, Howard Lupton transferred his interest in one of the parcels, the Knight Property, to Billy and Vonda Downs by deed. On August 31, 1983, Howard Lupton transferred his interest in another parcel, the Dominguez Property, to Roy and Judith Beets by deed. Neither deed referenced the right-of-way.

On February 21, 1989, over forty-seven years after the Deed of Right-of-Way was executed, NHD recorded the deed. The record does not reveal why NHD recorded the deed at that time or why it was not recorded earlier.

Following the recording of the Deed of Right-of-Way, the Downses conveyed their interest in the Knight Property to the Knights by deed. The deed was recorded on July 17, 1998. The Knights are the current owners of the Knight Property. The Knights subsequently granted a Deed of Trust to Chicago Title Insurance Company as Trustee on behalf of Appellant Mortgage Electronic Registration Systems, Inc. (MERS), as the beneficiary and nominee for Appellant Quicken Loans Inc., and its successor and assigns.

On May 24, 1999, the Beets transferred their interest in the Dominguez Property to Kalvin and Julie Wilkinson. The Wilkinsons transferred their interest in the Dominguez Property to Manuel Dominguez who subsequently transferred his interest to Manuel and Maria Dominguez. The deed was recorded on July 24, 2018. Manuel and Maria Dominguez are the current owners of the Dominguez Property.

## B. Procedural Background

On October 25, 2018, NHD filed a Complaint for Declaratory Judgment and Quiet Title seeking to quiet title to a thirty-three-foot-wide strip of land as described in the Deed of Right-of-Way in NHD. NHD also sought a declaratory judgment decreeing that it holds title to the thirty-three-foot-wide strip of land in fee simple or, alternatively, that it has an easement.

All parties moved for summary judgment. NHD asked the district court to grant summary judgment in its favor because there was no genuine issue of material fact that the Knights and the Dominguezes, as well as their predecessors in interest, were not bona fide purchasers. NHD argued that Appellants and their predecessors had notice of NHD's interest in the deeded right-of-way either pursuant to the recorded Deed of Right-of-Way or pursuant to the construction, use, maintenance, and physical possession of the Road by the public. Accordingly, NHD asserts that it acquired fee simple title to the property described in the right-of-way deed. Appellants asked the district court to grant summary judgment in their favor because they each acquired the status of a bona fide purchaser under what is known as the "Shelter Rule" since their predecessors in interest, *i.e.*, the Beets and the Downses, were bona fide purchasers. Therefore, NHD's interest in the right-of-way property is void as against Appellants.

Following a hearing, the district court entered its Order on Motions for Summary Judgment. The court held that Appellants are not protected under the Shelter Rule because they failed to prove their predecessors in interest were bona fide purchasers. The court explained that, because the Road has existed as a public highway since 1921, every subsequent purchaser had constructive notice of a possible adverse claim and therefore had a duty to inquire further, which Appellants failed to prove they did. The court also held that the plain language of the Deed of Right-of-Way expressly granted thirty-three feet on each side of the centerline, not eleven feet, and to find otherwise would misinterpret the plain language of the deed. Finally, the court held that the Deed of Right-of-Way conveyed fee simple title to NHD rather than a mere easement. Appellants timely appealed.

## II. STANDARD OF REVIEW

"When reviewing an order for summary judgment, the standard of review used by this Court is the same standard used by the district court in ruling on the motion." *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 556, 212 P.3d 982, 986 (2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Marek v. Hecla, Ltd.*, 161 Idaho 211, 220, 384 P.3d 975, 984 (2016); *see also Houpt v. Wells Fargo Bank, Nat. Ass'n*, 160 Idaho 181, 186, 370 P.3d 384, 389 (2016) ("If reasonable people could reach different conclusions or inferences from the evidence, summary judgment is inappropriate."). "This Court liberally construes the record in favor of the party opposing the motion for summary judgment and draws any reasonable inferences and conclusions in that party's favor." *Robison v. Bateman-Hall, Inc.*, 139 Idaho 207, 209, 76 P.3d 951, 953 (2003). Moreover, "[t]he fact that both parties move for summary judgment does not in and of itself establish that there is no genuine issue of material fact." *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 360, 93 P.3d 685, 691 (2004).

## III. ANALYSIS

### A. The district court erred in granting summary judgment in NHD's favor because there is a genuine issue of material fact as to what a reasonable investigation by Appellants' predecessors in interest would have revealed.

The primary question before the Court is whether Appellants acquired the status of bona fide purchasers under the "Shelter Rule," which protects a purchaser with notice if their predecessor in interest was an innocent purchaser. The district court held that Appellants did not acquire the status of bona fide purchasers under the Shelter Rule because their predecessors in interest were not bona fide purchasers since they all had constructive notice of the Road. In light of such constructive notice, Appellants' predecessors in interest were charged with a duty to inquire further, which would have revealed the existence of the right-of-way.

Appellants contend that their predecessors in interest were bona fide purchasers because they only had notice of the Road as it has existed since 1921, *i.e.*, twenty-two feet in width, and that it is "outside the scope of a reasonable inquiry to check for a large and unused right of way simply because a road is present." NHD contends that Appellants' predecessors in interest were not bona fide purchasers because the existence of the Road itself provided constructive notice

and imposed a duty to inquire further, which Appellants failed to prove they did. We agree that the existence of the Road provided Appellants' predecessors in interest with constructive notice of a potentially adverse ownership interest related to the road, thereby establishing a duty to inquire further. Nevertheless, we hold that there is a genuine issue of material fact as to what a reasonable investigation would have revealed.

Idaho Code section 55-812 provides that "[e]very conveyance of real property other than a lease for a term not exceeding one (1) year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded." Accordingly, in a race-notice jurisdiction like Idaho, an unrecorded conveyance of real property is void against a subsequent purchaser of the same property where the subsequent purchaser takes the property in good faith and for valuable consideration and records their interest in the property first.

However, even if a subsequent purchaser is not a bona fide purchaser, if they took an interest in their property from a bona fide purchaser, they may be vicariously sheltered in the latter's protective status. This is known as the "Shelter Rule." The "Shelter Rule" is a common law doctrine that exists to "prevent the stagnation of property, and because the first purchaser, being entitled to hold and enjoy, must be equally entitled to sell." *Strekal v. Espe*, 114 P.3d 67, 74 (Colo. App. 2004) (quoting *Reed v. Munn*, 148 F. 737, 753 (8th Cir. 1906)). Many states have recognized the Shelter Rule in one form or another. *See, e.g.*, *W. W. Planning, Inc. v. Clark*, 456 P.2d 406, 409 (Ariz. App. 1969); *Reiner v. Daniel*, 259 Cal.Rptr. 570, 574 (Ct. App. 1989); *Strekal*, 114 P.3d at 74; *Schulte v. City of Detroit*, 218 N.W. 690, 690–91 (Mich. 1928); *Swan Quarter Farms, Inc. v. Spencer*, 514 S.E.2d 735, 739 (N.C. App. 1999); *Knowles v. Freeman*, 649 P.2d 532, 536 (Okla. 1982); *Duty v. Duty*, 661 S.E.2d 476, 478–79 (Va. 2008); *Hawkes v. Hoffman*, 105 P. 156, 158 (Wash. 1909).[2]

The Shelter Rule was recognized by the Idaho Court of Appeals in *Sun Valley Land and Minerals, Inc. v. Burt*, 123 Idaho 862, 868, 853 P.2d 607, 613 (Ct. App. 1993):

> The "Shelter Rule" provides that one who is not a bona fide purchaser, but who takes an interest in property from a bona fide purchaser, may be sheltered in the latter's protective status. This rule is established in many jurisdictions. *See* 77

---

[2] The Shelter Rule is also a recognized principle in the Uniform Commercial Code (UCC), which has been adopted by every state. *See* I.C. § 28-8-302 ("Except as otherwise provided in subsections (2) and (3) of this section, a purchaser of a certificated or uncertificated security acquires all rights in the security that the transferor had or had power to transfer.").

AM.JUR.2d *Vendor and Purchaser* § 718 (1975); ANNOT., *Right of One Who, with Knowledge of Outstanding Equity, Derived His Interest to Real Property From or Through a Bona Fide Purchaser, to same Protection as Latter*, 63 A.L.R. 1362 (1929). However, it has not been articulated in Idaho. Idaho code § 55-606, describing a bona fide purchaser, was adopted from a nearly identical section of the California Civil code, therefore it is presumed to carry the construction given by the jurisdiction from which the statute was taken. *Siegel Mobile Home Group, Inc. v. Bowen*, 114 Idaho 531, 757 P.2d 1250 (Ct. App. 1988) (citing *Johnson v. Casper*, 75 Idaho 256, 270 P.2d 1012 (1954)). When construing their own statute, the California courts have established that a bona fide purchaser can transfer good title to a person who has notice of a prior adverse equity or right. *Jones v. Indep. Title Co.*, 147 P.2d 542 (Cal. 2d 1944); *Rose v. Knapp*, 314 P.2d 812 (Cal. App. 2d 1957). *See also W.W. Planning, Inc. v. Clark*, 456 P.2d 406 (Ariz. App. 1969).

There are two exceptions to the rule: (1) where the interest held by a bona fide purchaser was obtained from a grantor with notice of an outstanding interest in the property, and the property is reconveyed to the grantor; and (2) when the property is reconveyed from a bona fide purchaser to a person guilty of a violation of a trust or duty with respect to the property. 77 AM.JUR.2d *Vendor and Purchaser* §§ 720, 721.

Here, Appellants do not dispute that they are not bona fide purchasers because NHD recorded the Deed of Right-of-Way prior to Appellants taking an interest in their respective properties. Rather, Appellants rely on the Shelter Rule to protect their interests. Accordingly, the initial question is whether there is a bona fide purchaser in Appellants' chain of title. The answer to that question depends on whether Appellants' predecessors in interest had notice of the right-of-way, and whether such notice prompted a duty to inquire.

To be a bona fide purchaser of real property, one must have purchased the property in "good faith." I.C. § 55-812. "Good faith means a party purchased the property without knowing of any adverse claims to the property." *Sun Valley Hot Springs Ranch, Inc. v. Kelsey*, 131 Idaho 657, 661, 962 P.2d 1041, 1045 (1998). "[O]ne who fails to investigate the open and obvious inconsistent claim cannot take in good faith." *Tiller White, LLC v. Canyon Outdoor Media, LLC*, 160 Idaho 417, 419, 374 P.3d 580, 582 (2016) (quoting *W. Wood Inv., Inc. v. Acord*, 141 Idaho 75, 86, 106 P.3d 401, 412 (2005)).

Moreover, "[o]ne buying property in the possession of a third party is put upon notice of any claim of title or right of possession by such third party, which a reasonable investigation would reveal." *Langroise v. Becker*, 96 Idaho 218, 220, 526 P.2d 178, 180 (1974) (quoting *Paurley v. Harris*, 75 Idaho 112, 117, 268 P.2d 351, 353 (1954)); *see also Villager Condo. Ass'n,*

*Inc. v. Idaho Power Co.*, 121 Idaho 986, 990–91, 829 P.2d 1335, 1339–40 (1992) ("[W]hatever is notice enough to excite the attention of a man of ordinary prudence and prompt him to further inquiry, amount[s] to notice of all such facts as a reasonable investigation would disclose." (quoting *Fenton v. King Hill Irr. Dist.*, 67 Idaho 456, 466, 186 P.2d 477, 482 (1947))). "When determining whether a party is a bona fide purchaser . . . the Court must look at what notice the party had before and up to the time the party recorded its interest." *Sun Valley Hot Springs Ranch, Inc.*, 131 Idaho at 661, 962 P.2d at 1045.

We hold that the existence of the Road was sufficient to impart constructive notice to Appellants' predecessors in interest. Although NHD was only in physical possession of a portion of the land conveyed in the Deed of Right-of-Way and there were no physical indications on the property itself signifying that NHD had a claim to an additional twenty-two feet of highway from the centerline, the existence of the Road alone is notice enough to excite the attention of a reasonable person and prompt him or her to inquire further.

The next question is the pivotal one in this case: what would such an inquiry have disclosed? As mentioned above, such an inquiry "amount[s] to notice of all such facts as a *reasonable investigation* would disclose." *Villager Condo. Ass'n, Inc.*, 121 Idaho at 991, 829 P.2d at 1340 (emphasis added) (quoting *Fenton*, 67 Idaho at 466, 186 P.2d at 482). The controlling words here are "reasonable investigation." The district court held that "a reasonable inquiry would have discovered the public highway right-of-way." However, neither party provided any evidence to support the court's holding. Rather, NHD argued during the summary judgment hearing that Appellants had a duty to contact NHD and ask whether they "are in possession of a portion of our property. . . . And at that point in time if the Nampa Highway District pulls out the deed of right-of-way and says, '[b]y virtue of this,' then, you know, they're obviously aware of what is occurring." However, NHD did not allege that they would have been able to produce the deed at the time the predecessors in interest to the Knights and Domingeuzes took possession. In fact, there is no evidence in the record indicating why the deed was not recorded in 1941, where the deed was located from 1941 to 1989 (the year it was eventually recorded), or whether NHD was even aware that it possessed the deed over much of the forty-seven years it remained unrecorded, yet in its possession. Thus, based on NHD's statement and the lack of evidence in the record, there exists a genuine issue of material fact as to what a reasonable investigation would have disclosed. *See Langroise*, 96 Idaho at 221, 526 P.2d at 181

("The pleadings, depositions and affidavits disclose a genuine issue of fact over what a reasonable investigation would have disclosed.").

Accordingly, we remand this case to the district court to determine what a reasonable investigation would have disclosed. If the facts show that a reasonable investigation would have revealed NHD's interest in the right-of-way, then Appellants' predecessors in interest were not bona fide purchasers. On the other hand, if the facts show that a reasonable investigation would not have revealed NHD's interest in the right-of-way, then Appellants' predecessors in interest were bona fide purchasers and Appellants would be sheltered in the latter's protective status. If that is the case, then the Deed of Right-of-Way cannot be enforced against Appellants.

**B. There is a genuine issue of material fact as to whether the Road, by law, has a minimum width of fifty feet.**

NHD argues for the first time on appeal that Appellants' predecessors in interest were not bona fide purchasers because they were on constructive notice that the Road had a width of at least fifty feet as established by Idaho Code section 40-2312. Appellants conceded at oral argument that section 40-2312 establishes a minimum width for all highways in Idaho constructed after the statute's enactment in 1887; however, Appellants argued that the predecessor of section 40-2312 that existed when the Road was constructed in 1921 included an important exception: the mandatory minimum width did not apply to "streets located within townsites," and according to Appellants, whether the Road was located within a "townsite" in 1921 is a question of fact which needs to be decided by the district court. We agree.

We initially note two things. First, although NHD raised this argument for the first time on appeal, it is proper for this Court to consider it because the overall issue of constructive notice and NHD's position on the issue has remained the same. That is, Appellants' predecessors in interest had constructive notice that the Road exceeded twenty-two feet. NHD's specific argument in support of its position may have evolved and received additional support since the proceedings below, but the issues presented on appeal and NHD's position with respect to those issues remain the same. *See State v. Gibson*, 164 Idaho 420, 423, 431 P.3d 255, 258 (2018) ("specific arguments in support of a position may evolve and receive additional support on appeal."). Because it is inexorably linked to the issue already before us, we will address NHD's argument.

Second, NHD's argument may become crucial to the outcome of the case if the district court finds on remand that a reasonable inquiry would not have revealed the existence of NHD's

interest in the right-of-way. That is because section 40-2312 establishes a minimum width of only fifty feet, which, from the centerline, is eight feet less than what is conveyed in the Deed of Right-of-Way. For obvious reasons, NHD would rather have the district court uphold the Deed of Right-of-Way than have the district court rely on section 40-2312. Nevertheless, depending on the ultimate outcome on remand, NHD's argument may require the district court to make a critical finding of fact to ensure that its final judgment complies with Idaho law.

From 1887 forward, the Idaho Legislature has mandated that "[a]ll highways, except alleys and bridges, must be at least fifty feet wide except those now existing of a less width." Rev. Stat. of Idaho Terr. § 932 (1887). This is the predecessor of today's section 40-2312, which provides in part:

> (1) Where the width of a highway is stated in the plat, dedication, deed, easement, agreement, official road book, determination or other document or by an oral agreement supported by clear and convincing evidence that effectively conveys, creates, recognizes or modifies the highway or establishes the width, that width shall control.
>
> (2) Where no width is established as provided for in subsection (1) of this section and where subsection (3) of this section is not applicable, such highways, except bridges and those located within cities, shall be not less than fifty (50) feet wide.

The rationale behind the mandatory fifty-foot-width of Idaho's highways is "for the proper keeping up and repair of roads generally." *Halvorson v. N. Latah Cty. Highway Dist.*, 151 Idaho 196, 207, 254 P.3d 497, 508 (2011) (quoting *Meservey v. Gulliford*, 14 Idaho 133, 148, 93 P. 780, 785 (1908)). "The Highway District may require additional space beyond the edge of the traveling surface of the roadway for upkeep, repair, or improvements to the road and these are all factors that the legislature might reasonably have considered when establishing a statutory fifty-foot requirement for Idaho's highways." *Id.* Therefore, "for highways created after the statute's enactment [in 1887], the statute establishes a mandatory width [of fifty feet]," regardless of whether the highway was established by prescription or laid out by the highway district. *Id.* at 205–06, 254 P.3d at 506–07 (explaining that section 40-2312 "prescribes a fifty-foot width to all highways and makes no distinction between highways established by prescription and highways laid out by the Highway District.").

Here, the parties concede that the Road was constructed after 1887 when the predecessor statute to section 40-2312 was enacted. Accordingly, the Road, by law, has a minimum width of fifty feet, unless it was located within a "townsite" when it was constructed. The version of

section 40-2312 that existed at the time the Road was established provided that "[a]ll highways, *except* alleys and bridges and *streets located within townsites*, must be not less than 50 feet wide and not to exceed 100 feet wide, except those now existing of a different width." C. S. § 1350 (1919) (emphasis added). Accordingly, in 1921 the fifty foot mandate did not apply to highways constructed within a "townsite."

As noted during oral argument, neither side has presented any evidence proving whether the Road was located within a townsite when it was first constructed in 1921. Accordingly, on remand, should the district court determine that a reasonable investigation would not have revealed NHD's interest in the right-of-way, the court should then determine whether the Road was located within a townsite when it was first constructed in 1921. If the court determines that it was located within a townsite, then the fifty-foot mandatory minimum is inapplicable and did not provide constructive notice. On the other hand, if the court determines that the Road was not located within a townsite, then the mandatory minimum is applicable and the Road, by law, has a minimum width of fifty feet.

**C. The district court erred in declaring NHD owns the right-of-way in fee simple.**

Appellants further contend that the district court erred in declaring NHD holds title to the thirty-three-foot-wide strip of land from the centerline of the Road as described in the Deed of Right-of-Way in fee simple, rather than as an easement. According to Appellants, the Deed of Right-of-Way only conveyed an easement because the language in the deed specifically limits the conveyance "for use as a public highway." NHD contends that the district court correctly analyzed and decided this issue because there is no language in the Deed of Right-of-Way that limits the use of the property. Although our ruling on summary judgment reverses the district court's ruling, to prevent further error on remand, we must address the issue. We hold that the district court erred in declaring NHD owns the right-of-way in fee simple rather than an easement.

"When construing an instrument that conveys an interest in land, courts seek to give effect to the intent of the parties to the transaction." *Neider v. Shaw*, 138 Idaho 503, 508, 65 P.3d 525, 530 (2003). "The intent of the parties is determined by viewing the conveyance instrument as a whole." *Id.* "Interpretation of an unambiguous conveyance instrument is a question of law to be settled by its plain language." *Id.* On the other hand, "[i]nterpretation of an ambiguous deed is

12

a question of fact to be settled by the language in the conveyance instrument and the facts and circumstances of the transaction." *Id.* "Whether a deed is ambiguous is a question of law." *Id.*

Although Idaho operates under a statute that presumes fee simple ownership, *see* I.C. § 55-604, "[w]hen land is dedicated as a street for public use, the landowner owns to the center of the street and the public acquires an easement, not a title in fee simple," *Neider*, 138 Idaho at 507, 65 P.3d at 529 (citing I.C. § 55-309). "An easement 'is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner.'" *Beckstead v. Price*, 146 Idaho 57, 62, 190 P.3d 876, 881 (2008) (quoting *Luce v. Marble*, 142 Idaho 264, 273, 127 P.3d 167, 176 (2005)). "An express easement may be by way of reservation or by exception." *Akers v. D.L. White Const., Inc.*, 142 Idaho 293, 301, 127 P.3d 196, 204 (2005). "An express easement by reservation reserves to the grantor some new right in the property being conveyed; an express easement by exception operates by withholding title to a portion of the conveyed property." *Id.*

In *C & G, Inc. v. Rule*, this Court had to decide whether certain deeds, each entitled "Right of Way Deed," conveyed an easement or an interest in fee simple. 135 Idaho 763, 767–77, 25 P.3d 76, 80–81 (2001). Each of the deeds recited that it did "grant, sell and convey" their "described piece, parcel of land" to Idaho Northern "[t]o have and to hold the said above described premises unto the said [Idaho Northern], its successors and assigns, forever." *Id.* We held that the deeds unambiguously conveyed fee simple title to Idaho Northern, reasoning that

> [t]he deeds do not limit the use of the parcels for "railroad purposes," nor is there any mention of a "right of way" anywhere in the body of the deeds. Also notable are the deeds' use of the term "forever," which appears more consistent with the conveyance of a fee simple rather than an easement. . . . In addition, there is no language in either of the deeds indicating that the grantors intended any type of reversionary interest in the properties such as a right of re-entry or possibility of reverter.

*Id.* at 767, 25 P.3d at 80; *see also Union Pac. R. Co. v. Ethington Family Tr.*, 137 Idaho 435, 438, 50 P.3d 450, 453 (2002) (explaining that the deeds conveyed fee simple title in part because "[t]he language of these deeds does not limit the use of the parcels for railroad purposes" and uses the term "forever.").

Here, the instrument of conveyance is entitled "Deed of Right-of-Way" and provides: "[w]hereas, it is desirable, proper, and necessary that a *public highway be laid out* and opened

for *public use* 33 feet wide on each side of a line . . . ." (Emphasis added). The deed further provides,

> [n]ow, THEREFORE, in consideration of the location and establishment of said public highway as above described and the benefits to accrue to us and each of us by such location, we, the undersigned owners and claimants of land *required for such highway purposes* as above designated, so hereby consent thereto; and we do hereby grant and dedicate so much of the lands owned and claimed by us and each of us as aforesaid lying within the boundaries of said strip to the public and to said Nampa Highway District, Canyon County, Idaho, *for use as a public highway*, and we hereby waive all claims for damages for and on account of same.

(emphasis added). The district court found that this language did not serve to limit or restrict the land to an easement; however, that is precisely what the language does. Although none of the substantive provisions in the deed refer specifically to a right-of-way, they clearly limit the use of the land to "a public highway" and do not use terms such as "forever." Therefore, NHD cannot successfully argue that it is entitled to use the land designated in the deed for any purpose other than a public highway. In addition, the conveyance is entitled "Deed of Right-of-Way," which belies a conveyance of fee simple title as found by the district court. Accordingly, we hold that the Deed of Right-of-Way, if found to be controlling on remand, would merely convey an easement to NHD, not title in fee simple. Consequently, we vacate the district court's declaration on this issue.

### D. Attorney fees on appeal.

NHD requests attorney fees on appeal pursuant to Idaho Code sections 12-117 and 12-121 and Idaho Rule of Civil Procedure 54. We have consistently held that "[t]his Court will not consider issues cited on appeal that are not supported by propositions of law, authority or argument[.]" *Meisner v. Potlatch Corp.*, 131 Idaho 258, 263, 954 P.2d 676, 681 (1998). Here, the only basis for NHD's request is a single conclusory sentence located in the "Conclusion" of its brief on appeal. Therefore, we will not consider the request for attorney fees.

### IV.    CONCLUSION

We reverse the district court's grant of summary judgment in favor of NHD and vacate its declaration that NHD is the fee simple titleholder of the right-of-way. Accordingly, we remand this case for further proceedings consistent with this decision. Costs are awarded to Appellants.

Chief Justice BURDICK, Justices BRODY, BEVAN and STEGNER **CONCUR.**